**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**JASMINE JOHNSON**                                           **PLAINTIFF**

**VS.**                                  **CAUSE NO.** 3:23-cv-3057-CWR-FKB

**MISSISSIPPI EMERGENCY MANAGEMENT AGENCY;**
**STEPHEN MCCRANEY, EXECUTIVE DIRECTOR**
**OF MISSISSIPPI EMERGENCY MANAGEMENT AGENCY,**
**INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;**
**LORETTHA THORPE, OFFICE DIRECTOR OF**
**PREPAREDNESS OF MISSISSIPPI EMERGENCY**
**MANAGEMENT AGENCY, INDIVIDUALLY AND IN**
**HER OFFICIAL CAPACITY; AND JULIUS GREEN,**
**NORTHERN BUREAU DIRECTOR**
**OF MISSISSIPPI EMERGENCY MANAGEMENT AGENCY,**
**IDIVIDUALLY AND IN HIS OFFICIAL CAPACITY**          **DEFENDANTS**

> SOUTHERN DISTRICT OF MISSISSIPPI
> **FILED**
> NOV 0 6 2023
> ARTHUR JOHNSTON
> BY_____ DEPUTY

**COMPLAINT**

**JURY TRIAL REQUESTED**

**COMES NOW** the Plaintiff herein, **JASMINE JOHNSON**, (hereinafter referred to as "Plaintiff Johnson"), by and through counsel, and files this "Complaint" against **MISSISSIPPI EMEGENCY MANAGEMENT AGENCY**, an Agency of the State of Mississippi (hereinafter referred to as "Defendant MEMA" or "the Agency"), **STEPHEN MCCRANEY, EXECUTIVE DIRECTOR OF MISSISSIPPI EMERGENCY MANAGEMENT AGENCY, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; LORETTHA THORPE, OFFICE DIRECTOR OF PREPAREDNESS OF MISSISSIPPI EMERGENCY MANAGEMENT AGENCY, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY,** (herein referred to as "Defendant Thorpe); and **JULIUS GREEN, NORTHERN BUREAU DIRECTOR OF MISSISSIPPI EMERGENCY MANAGEMENT AGENCY, INDIVIDUALLY AND IN**

1

**HIS OFFICIAL CAPACITY** (hereinafter referred to as "Defendant Green") and in support thereof, Plaintiff Johnson would show unto the Court the following, to-wit:

## INTRODUCTION

1.      Plaintiff  Johnson charges Defendant MEMA with unlawful employment practices on the basis of her sex and gender (*female*) and retaliation in violation of *42 U.S.C. § 2000e, et seq., Title VII of the Civil Rights Act of 1964, as amended* (hereinafter *"Title VII"*); and in violation of *Equal Pay Act, 29 U.S.C.S. §216*, for the payment of different wages to employees of opposite sexes for "equal work" on jobs, the performance of which requires equal skill, effort, and responsibility, and which are performed under similar work conditions. Plaintiff Johnson brings claims under *42 U.S.C. Section 1983* for the intentional discrimination and retaliation against Defendants McCraney, Thorpe, and Green because of Plaintiff Johnson's membership in a protected class, being a female; and Plaintiff Johnson brings claims in violation of the *First Amendment*, violation of the *Equal Protection Clause of the Fourteenth Amendment*, and *42 U.S.C. Section 1981*, being the *Civil Rights Act of 1991*.

2.      Plaintiff Johnson further charges that she was subjected to retaliation and reprisal by Defendants MEMA, McCraney, Thorpe, and Green for her engaging in a protected activity – her opposition to sex and gender discrimination, filing an internal grievance regarding her opposition to sex and gender discrimination (female) in the classification of staff and disparate pay on account of her sex and gender under *42 U.S.C. Section 1983*; and for engaging in adverse employment action as a result of her pursuing her internal grievance and filing her  internal grievance; and *First Amendment* protected speech. Specifically, Plaintiff Johnson charges that she was subjected to retaliation and reprisal by Defendants MEMA, McCraney, Thorpe, and Green after having complained to the Defendants about the disparate treatment of her by the

2

Defendants in granting pay incentive increases to two similarly situated male employees, but denying her an equally deserved **educational benchmark salary increase** which was in effect through June 30, 2022. The Mississippi State Personnel Board (MSPB) Policy and Procedure Manual dated July 1, 2021 which was in effect from July 1, 2021 through June 30, 2022 is attached hereto marked ***Exhibit "A"*** and incorporated herein by reference.

3.     Plaintiff Johnson filed a Charge of Discrimination and Retaliation with the Equal Employment Opportunity Commission (EEOC) on May 5, 2023, EEOC No. 423-2023-01060, against the Defendant, MEMA, regarding her termination which was dismissed by the "EEOC" with a Dismissal and Notice of Suit Rights  received on or about August 8, 2023 due to the EEOC's determination that Defendant MEMA does not have the requisite number of employees for the EEOC's investigation of her charge. Plaintiff Johnson is filing this action in a timely manner as required in the "Right to Sue" issued by the EEOC.

4.     Plaintiff Johnson's, *interalia*, claims that were before the EEOC and the claims of her Complaint filed herein are for her former employer and officials of the Defendant MEMA to comply with federal law and to pay employees through its **educational benchmark salary increase incentive** based upon objective factors such as skill, knowledge and professional experience rather than subjective ones wherein she was denied her pay increase which resulted in her termination for challenging said disparate treatment she was subjected to by the Defendants.

5.     Plaintiff Johnson is seeking declaratory and injunctive relief and damages against Defendants MEMA, McCraney, Thorpe, and Green to redress unlawful discrimination and retaliation and deprivation of her **educational benchmark salary increase** as a result of the Defendants MEMA, McCraney, Thorpe, and Green's violation of *Title VII of the Civil Rights Act of 1964*, as amended; and willful violation of the *Equal Pay Act, 29 U.S.C. §216*, as alleged

3

herein; and for prospective injunctive relief from engaging in unlawful employment practices in the granting of **educational benchmark salary increases** and terminating Plaintiff Johnson based upon her reporting and complaining of the bias against her as a female employee.

6.      The Mississippi State Employment Handbook, effective July 1, 2022, provides: "The State of Mississippi is an equal opportunity employer and assures equal employment opportunities to all persons in compliance with state and federal law. In order to implement the State's equal employment policy and to assure non-discriminatory personnel administration, the Mississippi State Personnel Board promotes non-discriminatory practices and procedures in all phases of personnel administration and prohibits any form of unlawful discrimination. Equal employment opportunity can only be attained through State agency commitment to complying with all applicable laws affording equal employment opportunities to individuals. Accordingly, it is imperative that State agencies make all personnel decisions in accordance with Mississippi State Personnel Board (MSBP) polices, practices, and procedures". That a copy of the Mississippi State Employee Handbook Statement or Equal Opportunity Employment, effective July 1, 2022 is attached hereto marked **_Exhibit "B"_** and incorporated herein by reference. Plaintiff Johnson, a female, contends that the Defendant's **educational benchmark salary increase incentive** and termination practices are subjective without regard to any other criteria such as educational background, work experience, integrity and overall fitness for the position or the "skill, knowledge and professional experience" of the candidate and this selection and promotional process discriminates against female candidates as a class.

7.      Defendants MEMA, McCraney, Thorpe, Green, and MEMA's management team members such as Defendants McCraney, Thorpe, and Green granted pay increases and terminated with disregard of the education, skill and professional experience of the candidates

4

and is thus a "smoke screen" to mask its disparate **educational benchmark salary increase incentive** which is "flawed and lends itself to discrimination" because of the candidate's sex and gender (female). Defendant MEMA and its officials should be enjoined from engaging in this disparate treatment in granting pay increases and termination with the Agency in violation of the *Equal Pay Act*.

8.      Plaintiff Johnson claims that she received different treatment by the Defendants MEMA, McCraney, Thorpe, and Green in the denial of her **educational benchmark salary increase** and being terminated thereafter for reporting and complaining of the disparate treatment that she endured as a result of the denial of her **educational benchmark salary increase** as itemized in her EEOC Charge No. 423-2023-01060 dated May 5, 2023.

9.      The Defendants MEMA, McCraney, Thorpe, and Green should be enjoined from the discriminatory selection process for granting pay increases and termination that subjects female candidates to discrimination and retaliation in the event that they protest this unlawful granting of pay increases and termination practices which are discriminatory on its face. The officials of Defendant MEMA, including Defendants McCraney, Thorpe, and Green, should be ordered and directed to comply with federal law so as to not discriminate based upon the sex and gender (female) in the granting of pay increases to candidates and in its termination practices.

10.     Defendants  McCraney, Executive Director of MEMA, Thorpe, Preparedness Director of MEMA, and Green, Northern Bureau Director of MEMA, are being sued in their official capacity and individually in this action under *42 U.S.C. Section 1983*. Defendants McCraney, Thorpe, and Green were personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation – the denial of equal protection as guaranteed by the United States Constitution; and for *First Amendment* retaliation - under

5

§1983.

11.     Defendants MEMA, McCraney, Thorpe, and Green subjected Plaintiff Johnson to "adverse action" as a result of her engaging in a protected activity – by protesting MEMA's disparate pay increase and termination practices. As a result, Defendants MEMA, McCraney, Thorpe, and Green took adverse action against Plaintiff Johnson for her engaging in a protected activity under *Title VII* and the *First Amendment to the United States Constitution* by not granting her a pay increase and terminating her from MEMA for challenging said disparate treatment.

12.     Defendants MEMA, McCraney, Thorpe, and Green intentionally discriminated against Plaintiff Johnson as a result of her membership in a protected class – a female; and retaliated against her for exercising her right to challenge disparate treatment in the granting of pay increases and termination practices of Defendant MEMA because of her sex and gender; and retaliated against her for engaging in a protected activity for  opposing the discriminatory pay increases and termination practices of the Defendant MEMA and its officials.

13.     Plaintiff Johnson is charging the Defendants MEMA, McCraney, Thorpe, and Green with retaliation against her for reporting and complaining to the Defendants MEMA, McCraney, Thorpe, and Green for violating the *Equal Protection Clause and First Amendment* rights of Plaintiff Johnson.

14.     Plaintiff Johnson would show that to state a claim under *42 U.S.C. §1983*, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law."

15.     Plaintiff Johnson claims that she received different treatment than that received by similarly situated individuals and that unequal treatment stemmed from a discriminatory intent;

and the different treatment was on account of her sex and gender (female). When Plaintiff Johnson complained, she was met with retaliation and reprisal; and her compensation has been adversely affected in retaliation for her raising a matter of "public concern" at the Defendant MEMA.

16.     Plaintiff Johnson would show that Defendants MEMA, McCraney, Thorpe, and Green violated a statutory or constitutional right and that right was 'clearly established' at the time of the challenged conduct.

17.     Plaintiff Johnson would show that at the time of the violation as alleged herein, both the United States Supreme Court and Fifth Circuit law clearly proscribed that the actions of Defendants McCraney, Thorpe, and Green were unlawful and violated a statutory or constitutional right of Plaintiff Johnson. Defendant Green had a pattern of bullying Plaintiff Johnson who filed an internal grievance or complained about her working conditions. Defendant Thorpe was aware of such conduct on the part of Defendant Green; and Defendant Thorpe and Defendant McCraney condoned such treatment of Plaintiff Johnson.

18.     Plaintiff Johnson would show that Defendants McCraney, Thorpe, and Green's conduct violated a clearly established right when the contours of the right are sufficiently clear that every reasonable official would have understood that the conduct at issue violates the right.

19.     Plaintiff Johnson seeks an injunction prohibiting this unequal treatment based upon sex and gender in the workplace at the Defendant MEMA. Plaintiff Johnson is seeking this Court to enjoin Defendants MEMA, et al from engaging in bullying and draconian tactics for female state employees that challenge employment related issues such as sex and gender discrimination; to enjoin the Defendant MEMA, et al from engaging in unlawful employment practices in violation of the *Equal Pay Act* that does not provide equal pay for equal work within

7

the Defendant MEMA; and for failing to compensate Plaintiff Johnson for work performed that caused Plaintiff Johnson to be denied compensation due her and that altered the terms and conditions of her employment.

20.     Defendant McCraney is the Executive Director of MEMA, and he is being sued in his official capacity in this action under *42 U.S.C. §1983*. Defendants Thorpe and Green are being sued in their official capacity involved in the constitutional violation or whose acts that are causally connected to the constitutional violation – the sex discrimination and retaliation, denial of equal protection as guaranteed by the *United States Constitution; First Amendment* retaliation, said causes of action being brought pursuant to *42 U.S.C. §1983*.

21.     Defendants McCraney, Thorpe, and Green are being sued as well individually in this action for their conduct.

22.     Defendants McCraney, Thorpe, and Green were either personally involved in the constitutional violation or their acts are causally connected to the constitutional violation against Plaintiff Johnson of her *First Amendment* and protected speech; and for violation of the *Equal Pay Act*.

23.     Defendants McCraney, Thorpe, and Green intentionally discriminated and retaliated against Plaintiff Johnson as a result of her membership in a protected class – a female; and for exercising her right to challenge disparate treatment as to a MEMA female employee who endured disparate treatment in pay and termination. Defendant Green personally and with the approval of Defendant Thorpe engaged in efforts to dissuade staff and employees of MEMA such as Plaintiff Johnson from challenging disparate pay.

24.     Defendants McCraney, Thorpe, and Green further retaliated against Plaintiff Johnson during the pendency of her employment with Defendant MEMA by refusing to grant her

8

deserved **educational benchmark salary increase,** and caused her to be paid a lower salary than her two male co-workers similarly situated. Defendants McCraney, Thorpe, and Green's actions resulted in Plaintiff Johnson not receiving her **educational benchmark salary increase** and punished her for protected speech, opposing and participating in the filing of an internal grievance with the Agency, and addressing Agency matters of public concern.

25.    Plaintiff Johnson would show that State officials such as Defendants McCraney, Thorpe, and Green, when being sued in his or her official capacity for injunctive relief, are persons under Section 1983 because "official- capacity actions for prospective relief are not treated as actions against the State.

26.    Plaintiff Johnson seeks injunctive relief from this Court against the Defendants MEMA, McCraney, Thorpe, and Green to ensure equal pay in order for female MEMA employees, like Plaintiff Johnson, do not face retaliation and reprisal for challenging unlawful employment practices of Defendant MEMA and its management team; that Defendant MEMA and its management team do not interfere with the due process rights of state employees that results in constitutional deprivations of life, liberty and property without due process.

## **JURISDICTION**

27.    Plaintiff Johnson's claims arise under *42 U.S.C. § 2000e, et seq., Title VII of the Civil Rights Act of 1964,* as amended, for engaging in sexual or gender discrimination towards females, including Plaintiff Johnson; and in retaliation in violation of *Title VII;* violation of the *Equal Pay Act*; and her claims arise under *42 U.S.C. Section 1983* for denial of equal protection under the *Fourteenth Amendment to the United States Constitution* and *First Amendment* retaliation as alleged herein. Jurisdiction of this Court over Plaintiff's claims is based on *42*

*U.S.C. §2000e-5; 28 U.S.C. §1331;* and *28 U.S.C.* §343. Plaintiff's claims for declaratory relief arise under *28 U.S.C. § 2201* and §2202.

## PARTIES

28.     Plaintiff Jasmine Johnson ("Plaintiff Johnson") is an adult resident citizen of the State of Mississippi residing at her home address of 876 Pisgah Bottom Road, Canton, Mississippi 39046.

29.     Defendant *Mississippi Emergency Management Agencey* ("MEMA" or "Agency") is an agency duly incorporated in the State of Mississippi and may be served with process of this Court as follows:  Its duly appointed respresentative, Attorney General of the State of Mississippi Lynn Finch, at the Office of the Attorney General of the State of Mississippi, Walter Sillers Building, Suite 1200, Jackson, Mississippi 39201.

30.     Defendant Stephen C. McCraney (Defendant McCraney), is the Executrix Director of MEMA; and he may be sered with process at his business address of One MEMA Drive, Pearl, Mississippi 39208.

31.     Defendant Loretta Thorpe  (Defendant Thorpe), is the preparedness director of MEMA; and she may be served with process at her business address of One MEMA Drive, Pearl, Mississippi 39208.

32.     Defendant Julius Green, (Defendant Green), is/was the Northern Bureau Director of MEMA; and he may be served with process at his current place of employment at Hinds Community College, Raymond Campus, 501 E. Main Street, Raymond, Mississippi 39154.

33.     At all material times and during the acts alleged herein, Defendants MEMA, McCraney, Thorpe, and Green acted by and through their designees and agents named herein; and that, at all material times alleged herein, Defendants MEMA, McCraney, Thorpe, and Green

had actual knowledge of the asserted discriminatory treatment towards Plaintiff Johnson, a former female employee of MEMA, and were deliberately indifferent to that discrimination; and they were personally involved in the constitutional wrongdoers.

34.    At all material times and during the acts alleged herein, Defendants MEMA, McCraney, Thorpe, and Green had knowledge of the protected activity of Plaintiff Johnson in that she made them aware of her desperate treatment regarding her failure to receive her **educational benchmark salary increase**, the denial of her pay increase and subsequent termination by MEMA because of her sex and gender (female) and that they were deliberately indifferent to Plaintiff Johnson's protection from retaliation and reprisal for engaging in a protected activity under *Title VII of the Equal Protection Clause of the Civil Rights Act of 1964, amended*; and their unlawful actions give rise to claims under *42 U.S.C. §1983 of the Equal Protection Clause under the Fourteenth Amendment of the United States Constitution*; the *First Amendment of the United States Constitution* and the *Equal Pay Act* as alleged herein against Defendants MEMA, McCraney, Thorpe, and Green.

35.    At all material times and during the acts alleged herein, Defendants MEMA, McCraney, Thorpe, and Green engaged in conduct that "set the wheels into motion" that lead to the intentional violation of Plaintiff Johnson's constitutionally protected rights as alleged herein; and Defendants MEMA, McCraney, Thorpe, and Green are personally liable for their own acts and conduct as alleged herein that violated *Title VII of the Equal Protection Clause of the Civil Rights Act of 1964, amended*; and their unlawful actions give rise to claims under *42 U.S.C. Section 1983 of the Equal Protection Clause under the Fourteenth Amendment of the United States Constitution*; the *First Amendment of the United States Constitution* and the *Equal Pay Act* as alleged herein against Defendants MEMA, McCraney, Thorpe, and Green.

11

36.     Plaintiff Johnson would show that under the Equal Protection Clause, she has the right to be free from intentional discrimination based upon sex and gender (female) in the granting of pay increases granted to male employees when she is just as qualified as the male employees who received said pay increases, and she has the right to be free from intentional retaliation of being terminated for complaining and reporting said discrimination to Defendants MEMA, McCraney, Thorpe, and Green.  Plaintiff Johnson also engaged in a protected activity under the *First Amendment*, and she was retaliated against by Defendants MEMA, McCraney, Thorpe, and Green.  As a result, the actions of Defendants MEMA, McCraney, Thorpe, and Green give rise to liability under *42 U.S.C.§1983* for such gender discrimination, equal protection violation and *First Amendment* retaliation.

37.     At all material times and during the acts alleged herein, Defendants MEMA acted by and through their designees and agents named herein; and that at all material times alleged herein, Defendants McCraney, Thorpe, and Green had actual knowledge of the asserted discriminatory treatment towards Plaintiff Johnson and Defendants McCraney, Thorpe, and Green were deliberately indifferent to her sex or gender discrimination; and retaliation and Defendants McCraney, Thorpe, and Green were personally involved and the constitutional wrongdoers; and Defendants McCraney, Thorpe, and Green knew that their actions were in violation of clearly established law.

38.     At all material times and during the acts alleged herein, Defendants McCraney, Thorpe, and Green had knowledge of the protected activity of Plaintiff Johnson, infra, and they were deliberately indifferent to Plaintiff Johnson's protection from retaliation and reprisal for engaging in protected speech under the *First Amendment* and engaging in a protected activity;

and these acts of retaliation and reprisal give rise to a claim under *42 U.S.C. Section 1983* against Defendants McCraney, Thorpe, and Green.

39.     Plaintiff Johnson would show that under the *Equal Protection Clause*, she has the right to be free from intentional discrimination based upon sex and gender (female); and she also engaged in a protected activity under the *First Amendment* and she was retaliated against by Defendants McCraney, Thorpe, and Green. As a result, the actions of Defendants McCraney, Thorpe, and Green, et al give rise to liability under *42 U.S.C. Section 1983* for such gender discrimination, retaliation, equal protection violation, *First Amendment* retaliation, and violation of the *Equal Pay Act*.

## FACTS

40.     Plaintiff Johnson is an African American female, born on March 25, 1993. Plaintiff Johnson is making claims against her former employer, Mississippi Emergency Management Agency, Inc. (hereinafter referred to as the **"MEMA"** or **"Agency"**), for discrimination and retaliation because of her sex and gender **(female)** pursuant to *Title VII of the Civil Rights Act of 1964, as amended ("**Title VII**"), the Fourteenth Amendment of the United States Constitution, the First Amendment of the United States Constitution,* and *the Equal Pay Act*.

41.     Plaintiff Johnson began her employment with MEMA on November 2, 2019. Plaintiff Johnson served as Emergency Management Specialist until November 9, 2022.

42.     Plaintiff Johnson engaged in the Defendant MEMA's **educational benchmark salary increase incentive program** in February, 2022.  Plaintiff  Johnson's efforts were unsuccessful as she was denied her pay increase by Defendants MEMA, McCraney, Thorpe, and Green.

13

43.     On or about September 27, 2022, Plaintiff Johnson reported and complained of her disparate treatment to Defendants MEMA, McCraney, Thorpe, and Green regarding its granting of pay increase incentive to two male employees and its denial of her pay increase incentive, and in retaliation for having engaged in a protected activity under *Title VII*, her employer, the Defendant MEMA, terminated her. Plaintiff Johnson alleged, *inter alia*, that the Defendant MEMA discriminatorily applied its **educational benchmark salary increase incentive program**, and the practices of the Defendant MEMA's management team constituted disparate treatment towards her, a female employee, and that Defendant MEMA's pay increase incentive program has had a disparate impact on her, a female employee, in the Agency and in particular in the denial of her pay increase incentive. That a copy of Plaintiff Johnson's complaint, via-email, to Defendant Green regarding her not having received her **educational benchmark salary increase** on September 27, 2022, is attached hereto marked *Exhibit "C"* and incorporated herein by reference.

44.     On November 9, 2022, Plaintiff Johnson was terminated by Defendant MEMA as a result of her complaining and reporting the disparate treatment that she endured as a result of Defendants, McCraney, Thorpe, and Green denying her **educational benchmark salary increase**. That a copy of Plaintiff Johnson's termination letter is attached hereto as *Exhibit "D"* and incorporated herein by reference.

45.     On or about November 22, 2022, Plaintiff Johnson filed an appeal to the Mississippi Employee Appeals Board (MEAB) appealing her termination. That a copy of Plaintiff Johnson's MEAB Appeal is attached hereto as *Exhibit "E"* and incorporated herein by reference.

46.     On or about February 2, 2023, the MEAB denied the Defendant MEMA's Motion to Dismiss Plaintiff Johnson's appeal. That a copy of MEAB's denial of Defendant Motion to Dismiss Plaintiff Johnson's appeal is attached hereto as *Exhibit "F"* and incorporated herein by reference.

47.     Plaintiff Johnson's MEAB Appeal was subsequently dismissed by MEAB based upon its 9.5(B) policy which states "at any time during an Employee Appeal Board (EAB), if an employee appeals issues pending before the EAB in a separate administrative or judicial forum, then it is grounds for dismissal of the EAB appeal." That a copy of the MEAB's dismissal of Plaintiff Johnson's MEAB Appeal is attached hereto as *Exhibit "G"* and incorporated herein by reference. That Plaintiff Johnson filed her EEOC Charge to preclude the expiration of her 180-day deadline for filing her charge after her termination. That a copy of Plaintiff Johnson's EEOC Charge of Discrimination is attached hereto as *Exhibit "H"* and incorporated herein by reference.

48.     On or about May, 2023, Plaintiff Johnson filed her a charge of discrimination, EEOC Charge No. No. 423-2023-01060, against the Defendant MEMA with the EEOC. This charge is related to the discrimination and retaliation of the Defendants' failure to grant Plaintiff Johnson a pay increase under the Agency's **educational benchmark salary increase incentive program** which was granted to two other similarly situated male employees of Defendant MEMA.

49.     On or about August 9, 2023, Plaintiff Johnson received her Notice of Suit Rights on this charge based upon MEMA not having the requisite amount of employees for EEOC to investigate. That a copy of the EEOC's Notice of Suit Rights received by Plaintiff Johnson is attached hereto marked *Exhibit "I"* and incorporated herein by reference.

50.     Plaintiff Johnson would show that at the time of her complaining and reporting of her disparate treatment in being denied her **educational benchmark salary increase**, Defendants MEMA, McCraney, Thorpe, and Green were aware of the discrimination reported by Plaintiff Johnson, and they were likewise aware of the discrimination, termination and retaliation that they subjected Plaintiff Johnson to by their involvement of obstructing the guidelines of the MSPB's **educational benchmark salary increase incentive program** in its denial of her request for said pay increase.

51.     Plaintiff Johnson, believing that she was subjected to continued discrimination on account of her sex and gender (female) and that she was being retaliated against for complaining and reporting her disparate treatment in regards to the denial of her pay increase incentive filed her EEOC charge with the EEOC.

52.     Plaintiff Johnson would show that the pay increase and termination practices and subjective selection process was discriminatory on its face and a blatant violation of *Title VII*, MSPB's Personnel Policies and Procedures Manual, and MSPB's State Employee Handbook that governs these types of pay increases and termination.

53.     Plaintiff Johnson would show that the "scheme" that the Defendants MEMA, McCraney, Thorpe, and Green engaged in to grant pay increases and termination with the Agency is a flawed and discriminatory system that should be revamped to include criteria that examines an employee's educational background, reputation for professionalism, integrity, accomplishments over the applicant's tenure with the Agency,  and any other objective criteria that weigh on the employees' background and experience as a whole; and not on unequal treatment on account of one's sex and gender (female).

54.     Plaintiff Johnson claimed that she had received treatment different from that received by two similarly situated male individuals and that the unequal treatment stemmed from a discriminatory and retaliatory intent on the part of Defendants MEMA, McCraney, Thorpe, and Green. Plaintiff Johnson, a female, requested a pay increase incentive from her employer Defendant MEMA upon obtaining her Master's Degree, that she was qualified to receive the pay increase in accordance with the pay increase incentive program of the Defendant MEMA, and she did not receive the pay increase although two similarly situated male employees were granted their pay increased under said program.

55.     Plaintiff Johnson, while employed by Defendant MEMA, had always received high marks and praise for her work performance with the Agency, but she was denied a pay increase, and she was terminated as a result of reporting the disparate treatment of being denied her pay increase compared to two similarly situated male employees which is in not in accordance with the MSPB's Personnel Policies and Procedures Manual and MSPB's State Employee Handbook; and based upon objective factors rather than solely subjective ones. This perversion of the Agency's policies was with the intent to discriminate against female candidates, particularly Plaintiff Johnson, as a class; and in violation of Title VII and the Equal Protection Clause and the Equal Pay Act.

56.     Plaintiff Johnson would show that at the time of her request to receive her **educational benchmark salary increase** that she had just as much experience, training and her credentials (***all of the required objective criteria such as years of experience, work performance and qualifications***) than the two similarly situated employees that received their **educational benchmark salary increases**.

17

57.     The Defendant MEMA and its officials were well aware of Plaintiff Johnson's desire to receive her **educational benchmark salary increase**. Plaintiff Johnson contends that she, a female employee, with the Defendant MEMA was treated differently and denied equal opportunity to receive a pay increase and was subsequently terminated for filing reporting and complaining of such disparate treatment by Defendant MEMA and its officials. The discriminatory practices of Defendant MEMA in its method of pay increases and termination has had a disparate impact on females, particularly Plaintiff Johnson, within the Agency; and the unlawful practice allows for favoritism, dislikes, and bias in the selection process in violation of *Title VII, the Fourteenth Amendment of the United States Constitution, the First Amendment of the United States Constitution,* and the *Equal Pay Act.*

58.     Plaintiff Johnson contends that the selection process of the Defendant MEMA for **educational benchmark salary increase** and termination in the case, *sub judice,* was and is subjective, prejudicial to females; lacked objective criteria in the selection process; failed to comply with the Agency's MSPB's Personnel Policies and Procedures Manual and MSPB's State Employee Handbook regarding pay increase and termination and the process is subjective, and discriminatory abuse towards females.

59.     Plaintiff Johnson would show that the Agency's selection process in granting pay increases and termination was discriminatory and retaliatory in violation of *Title VII of the Civil Rights Act of 1964, as amended.*

60.     Defendant MEMA and its management team denied the pay increase  to Plaintiff Johnson, and Defendant MEMA and its management team terminated her because of her sex and gender and for her having protested against the unlawful denial of a pay increase.

61.     Defendants MEMA and its management team were personally involved in the intentional discrimination and retaliation for which Plaintiff Johnson was subjected to after her protected activity of complaining and reporting to them their failure to grant her pay increase which resulted in her termination by the Agency.

62.     During Plaintiff Jasmine Johnson's employment at MEMA, she was assigned to manage the earthquake program, which included program planning and surveys, to prepare technical correspondence and reports, and to promote and implement emergency management training activities not specifically a Shakeout video. The Shakeout video was birthed by Plaintiff Johnson as a creative way to get the word out faster. Moreover, Plaintiff Johnson worked in teams to teach trainings related and unrelated to her assigned program.

63.     Overall, Plaintiff Johnson overly exceeded in all her assignments, sometimes the first in the office and the last to leave. Since Defendant Thorpe knew Plaintiff Johnson was trying to earn a leadership position, Defendants Thorpe and Green announced Plaintiff Johnson as the backup personnel for Bureau Director of the Northern Region. Due to the countless of hours that Plaintiff Johnson spent in the office after hours, Defendant Thorpe would adjust Plaintiff Johnson's schedule which allowed Plaintiff Johnson to get some rest. Plaintiff Johnson was never notified by administration that she failed to meet their expectations set by Defendants Thorpe and Green. Plaintiff Johnson was never reprimanded by any of Defendant MEMA's management.

64.     Plaintiff Johnson never refused an assignment that was given to her by her superiors. Since Plaintiff Johnson was the senior leader of the team as announced by Defendants Thorpe and Green, Plaintiff Johnson expressed concerns from the team when she made inquiries about assignments. Defendant Green then began to micro-manage the entire team. Defendant

Green made Plaintiff Johnson feel as though she could not express her opinions or be the leader he appointed her to be because many of times he had expressed to her that her opinion does not count.

65.     Plaintiff Johnson received the Mississippi State Personnel Policy and Procedures Manual effective July 1, 2021 which was the same year Plaintiff Johnson graduated with her Master's Degree on December 11, 2021, and she applied for her **educational benchmark salary increase** on February 3, 2022 which was still in place through June 30, 2022 as referenced in the MSPB's Personnel Policies and Procedures Manual with the **"BENCHMARK"** eligibility requirements under which she turned in her certification of higher education and was acknowledged for her achievement by her peers, Defendants Thorpe and Green, but Plaintiff Johnson did not receive the same opportunity as two other similarly situated males in her department within the Agency.

66.     Defendant Green, Ms. Susan Hardy (witness), and Plaintiff Johnson met on June 16, 2022 at which time Defendant Green harassed Plaintiff Johnson by pointing his fingers near her face and yelling "I am your supervisor, and your opinion does not count nor is it to be heard." Defendant Green began to beat his fist on the desk because he was angry about the email that Plaintiff Johnson sent him on June 13, 2022 in regard to the coordination of an assignment. Defendant Green stated, "Don't you ever send shit like that again! I should write you up! I am your bureau director! I am your supervisor! You are not!"

67.     In the conference on June 16, 2022 between Plaintiff Johnson and Defendant Green, Plaintiff Johnson started crying because of Defendant Green's aggressive actions and responded, "You are not my father. Please stop pointing your fingers in my face. And from now on, I do not want to have any more one on one meetings with you because of your denial that

your previous meeting with me never happened."  Ms. Hardy (witness) was looking stunned, scared, uncomfortable and looked like she wanted to cry. Defendant  Green told  Plaintiff Johnson that she did not have the authority to decide what kind of meeting she will have with him because he is the bureau director. Defendant Green kept saying that to Plaintiff Johnson numerous of times. Plaintiff Johnson finally asked Defendant Green what was this all about, and he told her that it was about her not cc'ing him on the emails that she had sent Donna Gray, grants manager, on Plaintiff Johnson's quarterly reports. Plaintiff Johnson explained that she did not intentionally exclude him from the emails because he was cc'd on the first one, and he was not cc'ed  on the subsequent ones  because those emails were corrections that she had made to the first email. Plaintiff Johnson apologized to him for not cc'ing him. Defendant Green then proceeded to tell Plaintiff Johnson "that while she was walking around the job smiling, he could count at least 5 people in the office who did not have her best interest at heart."

68.    The next day which was June 17, 2022, Jarratt Watkins, Wilson Bell, and Connie Akers told Plaintiff Johnson that Mr. Green had been asking them of Plaintiff Johnson whereabouts from a prior week during the G300/G400 course.

69.    On June 7, 2022, the day of the G300/G400 course, Plaintiff Johnson walked in class on time, and sat at a table that she saw was open. Defendant Green walked in and questioned Plaintiff Johnson desired seating choice. It was not declared that Plaintiff Johnson must sit at a particular table upon her entry into the class. Therefore, Plaintiff Johnson sat where there was availability. Defendant Green stood over Plaintiff, invading her personal space, and Plaintiff Johnson asked Mr. Green would he like her seat. Defendant Green responded, "What I want is for you to go to your assigned group and get involved in the course." At this time class had just begun and instructors were starting with allowing everyone to introduce themselves and

21

no groups had been assigned at this point. Plaintiff Johnson moved to another open seat just to clear Defendant Green from her personal space. Defendant Green then eventually took a seat in the seat Plaintiff Johnson was sitting in.

70.     On June 13, 2022, Mr. Green met with Plaintiff Johnson and told her, "You are not to work on any activities without my approval or be in contact with anyone without getting my approval. I will assign you all assignments and arrange others to help you from here on out. Your opinions and recommendations do not count, nor is it to be heard because you are not the supervisor or bureau director." Defendant Green then proceeded to outline Plaintiff Johnson's duties.

71.     All of this was because Plaintiff Johnson expressed her concerns to Defendant Green about the G2300 course that was organized by Ms. Valarie Wilbert and Plaintiff Johnson. Defendant Green seemed upset about how they carried out the course, but he did not instruct them nor set any expectations for how he wanted the course to be taught. Defendant Green made Plaintiff Johnson feel as if she was not getting the job done so Plaintiff Johnson offered to step down to allow him to reassign it to another teammate that would better accomplish his goal.

72.     After Plaintiff Johnson left Defendant Green's office on June 13, 2022, Defendant Green sent her an email with a list of assignments he wanted Plaintiff Johnson to complete from June 13, 2022 until January 2024. This email along with their conversation in their meeting were unnerving to Plaintiff Johnson because she expressed to Defendant Green that his timelines clashed with the COO's Matt Hewings and Office Director Loretta Thorpe's timelines for August 2022. Yet, it was still obsessive micro-managing over Plaintiff Johnson for he did not send this list to any of the males on the team. He ordered her to follow his commands verbatim which resulted in her failing to comply with the higher ups' deadlines and requests.

73.     In September 2022, Defendant MEMA released agency-wide raises based on the 2022 fiscal year. On September 27, 2022, Plaintiff Johnson noticed that she had gotten an agency-wide raise on her check of $100 dollars, but not her **educational benchmark salary increase**. Plaintiff Johnson asked Defendant Green why it was a small raise because she was promised an **educational benchmark salary increase** by Defendants Green and Thorpe for obtaining a higher degree while employed with the Agency. Defendant Green stated, "I'm surprised you even got a raise!" The same day, Plaintiff Johnson found out that two similarly situated male employees, Charlie Lewis and Jarrett Watkins, in the department where she was employed and with the same titles and responsibilities received an even higher raise because their agency-wide pay raises were calculated on top of their **educational benchmark salary increases** that Plaintiff Johnson never received. One of the two males received double what Plaintiff Johnson received.  Whatever percentage they received for the agency-wide raise was calculated on top of what they were already earning in addition to their educational benchmark pay raise. Plaintiff Johnson's educational bench mark credentials were forwarded to Defendant Green in February, March and April, 2022. But, she was not awarded her **educational benchmark salary increase** even after she had several conversations with Defendant Green on the status of her receiving it.

74.     As it erroneously claimed by Defendant MEMA's management team, the **educational benchmark salary increase incentive program** was **not** discontinued by Mississippi State Personnel Board (MSPB) in July 2021. The **educational benchmark salary increase incentive** program was discontinued by MSPB in July 2022 which resulted in Charlie Lewis receiving his educational benchmark after July 2021, and Jarrett Watkins receiving his educational benchmark in May 2022 which was before the July 2022 program was discontinued.

Although, Plaintiff Johnson received her Master's Degree and applied for receipt of her **educational benchmark salary increase** prior to its July, 2022 termination date, she still did not receive an **educational benchmark salary increase** nor was she considered. Although she met all requirements according to the MSPB Policy and Procedures Manual effective July 1, 2021 through June 30, 2022 for the **educational benchmark salary increase incentive program** and submitted her request multiple times starting from February 2022 before it was terminated on July 1, 2022, Plaintiff Johnson was denied her **educational benchmark salary increase** by the Defendants. That a copy of Plaintiff's submissions of Education Bench Mark Pay Raise submissions to the Defendants is attached hereto marked *Exhibit "J"* and incorporated herein by reference.

75.    Although  it was Defendant Green, Plaintiff Johnson's immediate supervisor, who requested her to forward her proof of degree certification to him for her **educational benchmark salary increase,** he responded to her by asking her to give him a call via-text. On the call, Defendant Green stated he could not discuss Plaintiff Johnson's compensation with her, and he did not know who she may discuss her compensation with.  All of this was done by Defendant Green as a form of harassment of Plaintiff Johnson to prevent her from receiving her **educational benchmark salary increase**. That a copy of Plaintiff's phone records with Defendant Green regarding her **educational benchmark salary increase** requests is attached hereto marked *Exhibit "K"* and incorporated herein by reference. That Plaintiff Johnson discussed her complaint of receiving her educational benchmark pay raise with Defendant Thorpe after not having her complaint addressed by Defendant Green.

76.    On October 12, 2022, Ms. Johnson received an emailed Notice of Due Process from human resources. Plaintiff  Johnson called Defendant Thorpe because she did not know

what the Notice of Due Process was concerning. Defendant Thorpe told Plaintiff Johnson that she did not know anything about it. Plaintiff Johnson then complained again to her about Defendant Green's mistreatment of her, aggression toward her, and his stalking of her on her social media account. Plaintiff Johnson told Defendant Thorpe that she was nervous about expressing her concerns to her about Defendant Green again because it seemed as if Plaintiff Johnson was being ignored and that Defendants Thorpe and Green's relationship appeared intimate. Plaintiff Johnson informed Defendant Thorpe that she wanted to proceed with filing the harassing supervision complaint against Defendant Green. Defendant Thorpe said that she had no other choice but to file the complaint if Ms. Johnson sent it. Defendant Thorpe told Plaintiff Johnson that she had to follow the chain of command and that meant giving it to her first then she would follow the rest of the steps.

77.     Upon Plaintiff Johnson sending the complaint to Defendant Thorpe, her demeanor changed towards Plaintiff Johnson. Defendant Thorpe sent Plaintiff Johnson an email  on October 24, 2022, saying that she could no longer have any communications with her until after a decision has been made about the Due Process Hearing. That a copy of Plaintiff Johnson's telephone log with Defendant Thorpe is attached hereto marked *Exhibit "L"* and incorporated herein by reference.

78.     Defendants Thorpe and Green both knew Plaintiff Johnson was seeking an **educational benchmark salary increase** or leadership position. Thereafter, Plaintiff Johnson began to be blackmailed once she began to express concerns about Defendants Thorpe and Mr. Green's relationship and why she did not receive an **educational benchmark salary increase** as, her similarly situated fellow coworkers, Mr. Watkins and Mr. Lewis, received.

25

79.     On November 10, 2022, Plaintiff Johnson was sitting at her desk, and she was approached by Attorney William Dreher, Defendant Thorpe, and Defendant Green stripping her of her work equipment, duties, and responsibilities at Defendant MEMA, and ordered to leave the premises.

80.     Plaintiff Johnson was deemed a threat to her superiors as she continued to express concerns of the unlawful discriminatory treatment against her and Defendant Green's unlawful behavior against her. Her pay was never rectified. Plaintiff Johnson informed Defendant Thorpe of the unfair treatment months before her wrongful termination date, and she was never removed from under Defendant Green's supervision. Yet, Defendants were condoning the unlawful behaviors set out by Defendant Green and the unlawful discriminatory treatment in her department for they agreed to have Jarrett Watkins and Charlie Lewis educational benchmarks forwarded to MSPB, but did not grant Plaintiff Johnson the opportunity to receive her **educational benchmark salary increase**.

81.     Plaintiff Johnson was not on the clock during her working hours when the production of the tiktok videos that Defendant MEMA is using as a pre-texual reason for her termination. Other MEMA employees were on the clock while they were participating in the TIKTOK videos of which she was accused of violating policy and procedure and subsequently terminated, but neither of the other employees lost their job. Also, there are other MEMA employees that have personal social media posts who were posted by them during work hours, and they were wearing MEMA apparel with name badges containing the MEMA name and logo while on their personal social media accounts. But, Plaintiff Johnson has been singled out amongst all, terminated without a grievance hearing, without Defendant MEMA following the proper protocols by ignoring her complaints about her immediate supervisor, and practicing

26

unlawful discriminatory and unequal pay which resulted in Plaintiff Johnson's wrongful, retaliatory, and discriminatory termination.

82.     Defendant MEMA further provides evidence of sex discrimination by showing the Notice of Due Process hearing was sent to all three participants in the video in which one male, Wilson Bell, who has two reprimands in his file according to the records Defendant MEMA has provided and Plaintiff Johnson does not have any reprimands. Yet, Plaintiff Johnson was terminated, but Wilson Bell was not terminated.

83.     Chapter 7 Section 7.1 of the Mississippi State Employee Handbook allows for an employee to be issued a Written Reprimand before it is necessary to issue disciplinary action reducing compensation or terminating employment. Plaintiff Johnson never received a oral or written reprimand. Yet, according to documentation provided by Defendant MEMA in its Position Statement during the MEAB and EEOC proceedings, it is allowing for one male employee, Wilson Bell, to receive two Written Reprimands and still remain employed with the Agency which is a lesser punishment than Plaintiff Johnson received with no previous Reprimands in her file. That a copy of Proof of Wilson Bell's Reprimands is attached hereto marked *Exhibit "M"* and incorporated herein by reference.

84.     Defendant MEMA states it "is an equal employment opportunity employer that takes pride in its diverse and inclusive team." However, this assertion is not accurate in regard to the disparate treatment that Plaintiff Johnson experienced in Defendant MEMA's award of **educational benchmark salary increases** and in regard to its disciplinary procedures. Defendant MEMA has attempted to cloud the issue upon which Plaintiff Johnson filed her EEOC Charge by providing the EEOC with a chart itemizing the employees who **received merit-based raises** which are not the same type of raises as **educational benchmark salary increases** upon

which Plaintiff Johnson has filed her EEOC Charge for disparate treatment. If "[Defendant] MEMA values every member of its team as they all work together to serve the citizens of Mississippi" as they are alleging, Plaintiff Johnson would have been awarded her **educational benchmark salary increase** just as her two similarly situated male co-workers, Charles Lewis and Jarrett Watkins, who were awarded **educational benchmark salary increases** which were in full effect at the time that she applied for her **educational benchmark salary increase** and which should have been awarded to her by Defendant MEMA as an incentive to her for having obtained her Master's Degree.

85.     It is apparent the Defendant MEMA and its management team does not "hold its employees accountable as it alleges for their "unsatisfactory behaviors" as it claims as Plaintiff Johnson was the only employee terminated as a result the alleged pre-textual "inappropriate behavior" that MEMA is accusing Ms. Johnson of having engaged in while the other employees, Amaris Edwards and Wilson Bell, were disciplined differently and were not terminated as a result of the same alleged "inappropriate behavior".

86.     Plaintiff Johnson should be awarded the fullest protection of an employee who has been subjected to disparate treatment, retaliated against and wrongfully terminated by Defendant MEMA under *Title VII of the Civil Rights Act of 1964, as amended,* the *Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, the First Amendment of the United States Constitution,* and the *Equal Pay Act.*

87.     Plaintiff Johnson seeks from this Court any and all relief available to her Including, but not limited to, front pay, back pay, compensatory damages, punitive damages and any other damage to which she is entitled under *Title VII of the Civil Rights Act of 1964, as*

amended, the *Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, the First Amendment of the United States Constitution,* and the *Equal Pay Act.*

Plaintiff Johnson seeks ***injunctive relief*** to be free from ***any more retaliation and/or reprisal*** for her having engaged in a protected activity by reporting and complaining of her disparate treatment regarding the Defendants MEMA and its management team's unlawful and discriminatory practices in denying her **educational benchmark salary increase** all of which resulted in her unlawful termination.

## COUNT I: EQUAL PAY ACT

88.     Plaintiff Johnson re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

89.     Plaintiff Johnson endured sex discrimination under the *Equal Pay Act* when MEMA paid two of her similarly situated male co-workers, Charles Lewis and Jarrett Watkins, of MSPB **educational benchmark salary increase incentive program** for obtaining graduate degrees, but they fail to pay and denied Plaintiff Johnson's request for her **educational benchmark salary increase** upon her obtaining a Master's Degree.

90.     There is a profound difference and distinguishment between the **educational benchmark salary increase** and the **merit-based raise** each of which are outlined in MSPB's Policy and Procedures Manual. That a copy of MSPB's Policy and Procedures Manual's employee **educational benchmark salary increase policy** is attached hereto marked **Exhibit "A"**. The raises in the itemization that MEMA provided to MEAB and the EEOC in its response to Plaintiff Johnson's MEAB appeal and EEOC Charge were all **merit-based raises**, not **educational benchmark salary increases** which were based upon advancement in an

29

employee's educational status. For purposes of the *Equal Pay Act*, the employees' jobs that are being compared must require substantially equal skill, effort, and responsibility, and must be performed under similar working conditions within the same establishment. Plaintiff Johnson and her two male co-workers were similarly situated which required substantially equal skill, effort and responsibility, and she performed under similar working conditions for Defendant MEMA as her two male co-workers which should have qualified her for the **educational benchmark salary increase** which was given to her two male co-workers.

91.     On appeal, the Fifth Circuit reversed the trial court's ruling granting [summary judgment in favor of TRT Holding, Inc.] in *Lindsley v. TRT Holdings,Inc., 984 F.3rd 460 (5th Cir. 1/7/2021)*. The court found that Lindsley had met her burden of establishing a prima facie case by showing that she held the same position as her male predecessors at the same hotel and that she was paid less than the male predecessors. Not only was it undisputed that Lindsley held the same job title as her male predecessors, but her former employer also provided no evidence that the position had changed so as to provide a justification for the pay differential. Similarly, Plaintiff Johnson's discrimination claims should be substantiated against Defendant MEMA and its management team, Defendants McCraney, Thorpe, and Green, as she has met her burden as in *Lindsley* in regard to establishing that she has been discriminated against under the *Equal Pay Act* due to the disparate treatment she endured in being denied her **educational benchmark salary increase** that had been granted to her two similarly situated male co-workers without justification, but for discrimination, in the denial by Defendant MEMA and its management team, Defendants McCraney, Thorpe and Green, of her receiving an **educational benchmark salary increase** which was in full effect when she obtained her graduate degree and applied for said **educational benchmark salary increase**.

92. Plaintiff Johnson would show that the Defendants MEMA's management team, McCraney, Thorpe, and Green's, reason for denying Plaintiff Johnson's pay increase and its reason for terminating Plaintiff Johnson are not true, but instead are pre-texts for gender discrimination against Plaintiff Johnson; and that the acts and conduct of Defendant MEMA and its management team denying Plaintiff Johnson' pay increase and its reason for termination of Plaintiff Hicks are blatant violations of the *Equal Pay Act* that constitutes sex and gender discrimination against females such as Plaintiff Johnson.

93. Defendants MEMA's management, McCraney, Thorpe, and Green, practices in denying Plaintiff Johnson's **educational benchmark salary increase** and terminating Plaintiff Johnson after complaining and reporting her disparate treatment were and are discriminatory towards females as a class; and that their pay increase and termination practices constitute disparate treatment; violates the personnel policies and procedures of the Agency that provides that pay increases would be based upon the skill, knowledge and professional experience with the Agency; and that this Court should provide such injunctive relief as may be necessary to prevent the Defendant MEMA and its management team, Defendants McCraney, Thorpe, and Green, from engaging in sex and gender discrimination as alleged herein.

94. Plaintiff Johnson seeks from this Court any and all relief available to her under the *Equal Pay Act*, including front pay, back pay, compensatory damages, punitive damages and any other damage and attorney's fees and cost of court, and Plaintiff Johnson seeks ***injunctive relief*** to be free from ***any more retaliation and/or reprisal*** for her having engaged in a protected activity by reporting and complaining of her disparate treatment regarding the Defendants MEMA and its management team, Defendants McCraney, Thorpe, and Green, unlawful and

31

discriminatory practices in denying her **educational benchmark salary increase** all of which resulted in her unlawful termination.

95.     Plaintiff Johnson would show that Defendant MEMA has paid different wages to employees of opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. The actions of the Defendant MEMA constituted a willful violation of the *Equal Pay Act* and Plaintiff Johnson seeks any and all back pay to which she is entitled including any "underpayment" to which she may be entitled to recover under the *Equal Pay Act*.

96.     Plaintiff Johnson would show that the *Equal Pay Act*, a portion of the *Fair Labor Standards Act*, prohibits sex discrimination in the form of unequal pay "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *29 U.S.C. § 206(d)(1)*. To establish a prima-facie case, a plaintiff must show 'that an employer pays different wages to employees of opposite sexes'" for such equal work, Plaintiff Johnson would show that she has established a prima-facie case against the Defendants.

97.     Plaintiff Johnson would show that under the *EPA*, that jobs held by employees of the opposite sexes need not be identical, they need only be substantially equal. In her case, Plaintiff Johnson would show that it is clear that her job was substantially equal to her two male co-workers who were awarded **educational benchmark salary increases** by Defendants MEMA, et al. However, Plaintiff Johnson's pay was suppressed.

98.     Plaintiff Johnson would show that the Defendant MEMA and its officials, including Defendants McCraney, Thorpe, and Green cannot present credible evidence that sex provides no part of the basis for the wage differential.

99.     Plaintiff Johnson would show that by its plain terms, *Title VII* makes actionable any form of sex-based compensation discrimination. *42 U.S.C. § 2000e-2(a)(1)* ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his [or her] compensation . . . because of such individual's . . . sex . . . ."). To be sure, one way an employer might discriminate against an employee because of her sex is to pay her less than her male peers who perform equal work. In such circumstances, an employee may seek redress under the *EPA* or, if the circumstances admit "an inference of discrimination," *Title VII*.

100.    As a result of the acts and conduct as alleged herein, Plaintiff Johnson seeks any and all relief available to her under the *Equal Pay Act, 29 U.S.C.S. § 216*, including any actual and compensatory damages that she is entitled to recover from the Defendants; and that the Defendants shall be liable to Plaintiff Johnson in the amount of her unpaid wages or her unpaid compensation, and in an additional equal amount as liquidated damages.

101.    Plaintiff Johnson would further show that the Defendants are liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section *15(a)(3) [29 USCS § 215(a)(3)]*, including without limitation employment and the payment of wages lost and an additional equal amount as liquidated damages as provided under *29 U.S.C. Section 216*.

102.    Plaintiff Johnson further seeks any and costs incurred in bringing this action, including any and all attorney's fees incurred in the bringing of this action, under the *Equal Pay Act, 29 U.S.C.S. § 216*.

## COUNT II: TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AMENDED

103.    Plaintiff Johnson re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

33

104.     Under *Title VII of the Civil Rights Act of 1964, as amended*, it shall be an

unlawful employment practice for an employer:

(1) to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

105.     Plaintiff Johnson states a claim for violation of *Title VII of the Civil Rights Act of 1964, as amended*, as she was an employee of Defendant MEMA who endured discriminatory acts committed by Defendants MEMA, McCraney, Thorpe, and Green in comparison to two male co-workers outside of her protected class who were similarly situated and treated better than she was in regard to the **educational benchmark salary increases** that were given to the two Defendant MEMA male co-workers, but she was denied the **educational benchmark salary increase** by Defendants MEMA, McCraney, Thorpe, and Green without any justification.

106.     Plaintiff Johnson's claim is substantiated pursuant to *Title VII* under the *Civil Rights Act of 1964, as amended*, based upon Defendants MEMA, McCraney, Thorpe, and Green's discriminatory actions against her with respect to her compensation, terms, conditions, or privileges of employment, because of her sex and which adversely affected her status as an employee, because of her sex.

107.     Plaintiff Johnson would show that she participated in statutorily protected activity she complained about regarding her denial of an **educational benchmark salary increase** and the unlawful and discriminatory actions of her supervisors, Defendants Green and Thorpe.

34

Plaintiff Johnson is entitled to protection under *Title VII* for reporting discriminatory employment practices.

108.   Plaintiff Johnson made allegations of sex and gender bias against her employer, Defendants MEMA, McCraney, Thorpe, and Green.   Prudent employees would have good reason to "keep quiet about *Title VII* offenses" against their employer if an employer could ***punish employees*** who reported discrimination like Plaintiff Johnson.   Plaintiff Johnson would show that the purpose of the anti-retaliation clause under *Title VII* is to "maintain unfettered access to statutory remedial mechanisms."

109.   Plaintiff Johnson would show that, after she engaged in a protected activity under *Title VII*, she was summarily denied an **educational benchmark salary increase** which subsequently resulted in her termination.

110.   Plaintiff Johnson would show that in the event that she "complain[ed] to her employer", Defendants MEMA, McCraney, Thorpe, and Green, in connection with an employer's alleged discrimination, then the employee's activities are entitled to protection under *Title VII.*

111.   Plaintiff Johnson would show that she can establish a ***convincing mosaic of direct and circumstantial evidence*** that would permit a reasonable trier of fact to infer discrimination and retaliation on the part of the Defendants MEMA, McCraney, Thorpe and Green; and that those actions were unlawful and in violation of *Title VII.*

112.   Defendants MEMA, McCraney, Thorpe, and Green  intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the Complaint of Plaintiff Johnson in violation of *Title VII*, and this Court should enjoin the Defendants MEMA, McCraney, Thorpe, and Green from engaging in such unlawful employment practice, and this

Court should order and direct such affirmative action as may be appropriate, which may include, but is not limited to, revamping of the educational benchmark pay raise policies of Defendant MEMA so as to not discriminate against candidates based upon their sex and gender or any other equitable relief as the court deems appropriate.

113.     Plaintiff Johnson would show that like disparate treatment, the disparate impact theory does not require proof of the Defendant's subjective gender or sexual animus or intent to discriminate. The theory of disparate impact, as in this case, is a doctrinal surrogate for eliminating unprovable acts of intentional discrimination hidden innocuously such as are being practiced by Defendants MEMA, McCraney, Thorpe, and Green in the **educational benchmark salary increase incentive program** and termination practices.

114.     Plaintiff Johnson would show that the primary purpose of *Title VII* was and is to assure equality of employment opportunities; and to eliminate discriminatory practices and devices which have fostered gender bias job environments and have served to cause women to be subjected to being disadvantage in the work force.   The promotional, pay increase and termination practices of the Defendants MEMA, McCraney, Thorpe, and Green blatantly violated the purpose, spirit and intent of *Title VII* to ensure equal opportunity regardless of one's sex and gender; and discriminated against female employees such as Plaintiff  Johnson on account of their sex and gender – being a female.

115.     As a result of the acts and conduct as alleged herein, Plaintiff Johnson seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct in violation of the provisions of *Title VII* including but not limited to, front pay, back pay, actual, and compensatory damages, attorney's fees, and cost of court as a result of the acts and conducts of the Defendants MEMA, McCraney, Thorpe, and Green as alleged herein.

116.    Plaintiff Johnson would further show that that unlawful and discriminatory acts and conduct of the Defendants MEMA, McCraney, Thorpe, and Green were engaged in to cause her emotional distress; and did cause Plaintiff Johnson emotional distress; and the acts and conduct that she was subjected to in the workplace entitles Plaintiff Johnson to seek recovery for actual and compensatory damages for her emotional injuries that occurred as a result of the actions of Defendants MEMA, McCraney, Thorpe, and Green.

117.    Plaintiff Johnson re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

118.    Plaintiff Johnson was unlawfully discriminated against in violation of *Title VII* as a result of the acts and conduct as alleged herein. Plaintiff Johnson was discriminated against on the basis of her sex and gender (female). Other similarly situated employees of Defendant MEMA that are male have been treated with preference, and she was subjective to retaliation and reprisal for challenging the unlawful practices of the Agency.

119.    Plaintiff Johnson would show that under the first step of the *McDonnell Douglas* framework, a plaintiff must establish a prima facie case of discrimination. To do so with respect to benefits or compensation, a plaintiff must show: (1) membership in a protected class, and she was and is; (2) satisfactory job performance, and she complies; (3) adverse employment action with respect to compensation, and she was paid less; and (4) that similarly-situated employees outside the protected class received more favorable treatment, and they did. *White v. BFI Waste Servs., Inc.*, 375 F.3d 288, 295 (4th Cir. 2004).

120.    Plaintiff Johnson would show that two male MEMA employees were treated differently in that they were provided additional pay by the Defendants based upon its

**educational benchmark salary increase program.**

121. Plaintiff Johnson would show that Defendants in this action had no legitimate reason not to pay her comparable pay for her services and then to retaliate against her when she complained of disparate pay. Plaintiff Johnson has been treated differently than her two male co-workers/counterparts with the Agency with similar expertise, certification and training.

122. Plaintiff Johnson would show that employees of Defendant MEMA, that are two males, were treated with preference and more favorably than her, a female, with regard to **educational benchmark salary increases**. Defendants McCraney, Thorpe, and Green were both in a position to address the complaints of Plaintiff Johnson, but failed to do so.

123. As a result of the unlawful treatment of Plaintiff Johnson, and being discriminated against based of her sex and gender (female) and in violation of federal law that prevents discrimination on the account of sex and gender, Plaintiff Johnson seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct that were in violation of *Title VII* including actual and compensatory damages, and any appropriate injunctive relief and/or equitable relief to which Plaintiff Johnson is entitled under *Title VII*.

124. As a result of the acts and conduct as alleged herein, Plaintiff Johnson further seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct in violation of the provisions of *42 U.S.C. § 1981,* being the *Civil Rights Act of 1991, as amended* including but not limited to, actual, compensatory and punitive damages as a result of the acts and conducts of the Defendants as alleged herein

## COUNT III: TITLE VII RETALIATION

125.    Plaintiff Johnson re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

126.    Under *Title VII of the Civil Rights Act, as amended*, applicants, employees and former employees are protected from employment discrimination based on race, color, religion, sex orientation or gender identity, national origin, age (40 or older), disability and genetic information (including family medical history).

127.    Applicants,    employees    and    former    employees    are    also    protected from retaliation (punishment) for filing a charge or complaint of discrimination, participating in a discrimination investigation or lawsuit, **or opposing discrimination**.

128.    At the time of her employment by Defendant MEMA, Plaintiff Johnson participated in a protected class based upon her sex and a protected activity of retaliation as she was treated with disparate treatment in comparison to her two similarly situated male co-workers who were awarded **educational benchmark salary increases**, and she was denied her **educational benchmark salary increase**. Plaintiff Johnson reported said disparate treatment to Defendant MEMA staff, Defendants McCraney, Thorpe, and Green, and she was subsequently fired. She was subjected to retaliation by Defendants MEMA, McCraney, Thorpe, and Green by being terminated after reporting the disparate treatment in regards to her being denied her **educational benchmark salary increase**, although her two similarly situated male co-workers received their **educational benchmark salary increases**.

129.    Plaintiff Johnson would show that she received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a

discriminatory and retaliatory intent on the part of Defendants MEMA McCraney, Thorpe, and Green.

130.    Plaintiff Johnson has met the element of a retaliation claim as she participated in a statutorily protected activity, and she communicated to her Defendant MEMA's supervisors, Defendants McCraney, Thorpe and Green, that she endured unlawful discrimination in regard to her **educational benchmark salary increase** being denied as opposed to her two similarly situated male co-workers having received their **educational benchmark salary increases**. Plaintiff Johnson will show the causal connection between the disparate treatment she was subjected to regarding being denied her **educational benchmark salary increase**, her reporting her discontentment of being denied her **educational benchmark salary increase** to MEMA's supervisors, Defendants Thorpe and Green, and the retaliation she endured by being terminated based upon her persistent communications regarding Defendant Green's harassing demeanor towards her, as her immediate supervisor, to Defendant Thorpe regarding her dissatisfaction of not having received her **educational benchmark salary increase** as well as Defendant Green's unreasonable harassing conduct toward her.

131.    Plaintiff Johnson would show that retaliation occurs when an employer takes action against an employee not because of his or her sex, but because she engaged in protected activity complaining about or otherwise opposing discrimination.   In this case, Defendants MEMA, McCraney, Thorpe, and Green engaged in such retaliation against Plaintiff Johnson in violation of *Title VII* and *the Equal Protection Clause*.

132.    Defendants MEMA, McCraney, Thorpe, and Green intentionally retaliated against Plaintiff Johnson in violation of *Title VII* and thus further engaged intentionally in an unlawful employment practice of discrimination against Plaintiff Johnson and, this Court should

40

enjoin the Defendants MEMA, McCraney, Thorpe, and Green from engaging in such unlawful retaliatory employment practice, and this Court should order and direct such affirmative action as may be appropriate to prevent the Defendants MEMA, McCraney, Thorpe, and Green from engaging in such unlawful retaliatory activity when an employee such as Plaintiff  Johnson is subjected to discrimination in the workplace.

133.    Plaintiff Johnson would show that in regard to her retaliation claim based on an equal protection violation under §1983 that Defendants MEMA, McCraney, Thorpe, and Green: (1)  took adverse employment action against her and (2) because Plaintiff  Johnson complained of or otherwise opposed discrimination and the unlawful employment pay increase practices, Plaintiff Johnson was terminated.

134.    Plaintiff  Johnson would seek judicial intervention and request that this Court utilize the injunctive authority to compel her **educational benchmark salary increase** and other appropriate relief against the Agency – Defendant MEMA – and the Defendants McCraney, Thorpe, and Green; and to provide such other and further relief, injunctive or otherwise to ensure the enforcement of *Title VII of the Civil Rights Act of 1964, amended,* as to the Defendant MEMA and its designees; and to ensure that female employees that file charges or lawsuit are not subjected to retaliation and reprisal by Defendant MEMA's management team.

135.    Plaintiff Johnson re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

136.    Plaintiff Johnson would show that she opposed the gender bias and treatment of a female MEMA employee, and she participated in statutorily protected activity – she complained about her pay on account of a prohibited factor – her sex and gender- and she filed her grievance

under the "Grievance Policy" of the Agency alleging disparate pay. Plaintiff Johnson was entitled to protection under the Agency policies and *Title VII* for reporting discriminatory employment practices – and that she should not be retaliated against for filing an Agency grievance and opposing sex and gender discrimination.

137.   Plaintiff Johnson would show that a "protected activity" includes "oppos[ition to] any act or practice made unlawful" under *Title VII* as well as making a charge, testifying, assisting, or participating "in any manner in an investigation, proceeding, or hearing." See *42 U.S.C. §2000e3(a) (Title VII)*. Plaintiff Johnson opposed the denial of her **educational benchmark salary increase** and disparate pay.

138.   Plaintiff Johnson would show that to satisfy this opposition requirement, [an employee] need only show that she had a 'reasonable belief that the employer was engaged in unlawful employment practices. Substantial persuasive authority at least implicitly accepts that threats to file such charges are protected when made in good faith.

139.   Plaintiff Johnson made allegations of sex and gender bias against her employer, d she appealed her disgruntlement to the MEAB, and she subsequently filed her Charge with the EEOC. An investigation by the EEOC resulted from the Charge. Prudent employees would have good reason to "keep quiet about *Title VII* offenses" against their employer if an employer could punish employees who reported discrimination or filed charges like Plaintiff Johnson. Plaintiff Johnson would show that the purpose of the anti-retaliation clause under *Title VII* is to "maintain unfettered access to statutory remedial mechanisms."

140.   Plaintiff Johnson would show that in the event that she "complain[ed] to her employer" in connection with an employer's alleged discrimination, then the employee's activities are entitled to protection under *Title VII*.

42

141.   Plaintiff Johnson would show that she can establish a convincing **mosaic of direct and circumstantial evidence** that would permit a reasonable trier of fact to infer discrimination and retaliation on the part of the Defendants; and that the actions taken against her in denying her **educational benchmark salary increase** and terminating her after complaining about said denial  were retaliatory, unlawful, and in violation of *Title VII of the Civil Rights Act of 1964, as amended* and *42 U.S.C. §1981* as to the Defendants.

142.   Plaintiff Johnson would further show that that acts and conduct of the Defendants management team were engaged in to cause her emotional distress; and did cause Plaintiff Johnson emotional distress; and the acts and conduct that she was subjected to in the workplace entitles Plaintiff Johnson to seek recovery for actual and compensatory damages for her psychological injuries that occurred as a result of the actions of the Defendants.

143.   Plaintiff Johnson would show that: (1) she participated in statutorily protected activity, and she did over the disparate pay issue (2) she suffered retaliation for engaging in that protected activity; and (3) there is a causal connection between the protected activity and the adverse action. After she complained, Plaintiff Johnson was subjected to the retaliation efforts of Defendants MEMA, McCraney, Thorpe, and Green.

144.   Plaintiff Johnson would show that she "complain[ed] to her employer" in connection with an employer's alleged discrimination, and disparate or unequal pay and that this activity was and is entitled to protection.

145.   Plaintiff Johnson would show that she was unlawfully discriminated against and retaliated against in violation of *Title VII* and *§1981*. Plaintiff Johnson would show that the Supreme Court has long recognized that effective protection against retaliation, the subject of *42 U.S.C. Section 2000e-3(a)*, is essential to securing "a workplace where individuals are not

discriminated against because of their protected ...status". The mandated reason for the statutory

protection is because of "fear of retaliation is the leading reason why people stay silent" about

discrimination they have encountered or observed in the workplace.

146.    As a result of the unlawful retaliation directed to Plaintiff Johnson in violation of

federal law that prevents retaliation, Plaintiff Johnson seeks any and all remedies and damages

available to her as a result of the aforementioned acts and conduct that were in violation of *Title*

*VII* including actual and compensatory damages, and any appropriate injunctive relief and/or

equitable relief to which Plaintiff Johnson is entitled under *Title VII.*

147.    As a result of the acts and conduct as alleged herein, Plaintiff Johnson seeks any

and all remedies and damages available to her as a result of the aforementioned acts and conduct

in violation of the provisions of *42 U.S.C. §1981*, being the *Civil Rights Act of 1991*, as amended

including but not limited to, actual, compensatory and punitive damages as a result of the acts

and conducts of Defendants, McCraney, Thorpe, and Green, as alleged herein.

## COUNT IV: TITLE VII HARASSMENT

148.    Plaintiff Johnson re-alleges and hereby incorporates by reference and makes a

part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of

fact contained therein.

149.    Harassment is unwelcome conduct that is based on race, color, religion, sex

(including sexual orientation, gender identity, or pregnancy), national origin, older age

(beginning at age 40), disability, or genetic information (including family medical history).

Harassment becomes unlawful where: 1) enduring the offensive conduct becomes a condition of

continued employment, or 2) the conduct is severe or pervasive enough to create a work

environment that a reasonable person would consider intimidating, hostile, or abusive.

150.    The harassment that Plaintiff Johnson endured as a result of Defendant's Green, singling her out and harassing her, was pervasive enough for a reasonable to person feel the presence of an intimidating, hostile, and abusive environment based upon his conduct of yelling at her during meetings and in the presence of other Defendant MEMA employees, pointing his finger at her during meetings, telling her that he was not forwarding her **educational benchmark salary increase** for approval, and using intimidating remarks to embarrass her in the presence of other Defendant MEMA's employees on several occasions throughout her employment with Defendant MEMA under his supervision. His conduct toward her was reported to Defendant MEMA staff, particularly, Defendant Thorpe, but went unaddressed. That a copy of correspondence evidencing Defendants Green and Thorpe's notice of the harassment that Plaintiff endured is attached hereto marked **Exhibit "N".**

151.    Plaintiff Johnson was unlawfully discriminated against based of her sex and gender (female) and in violation of federal law that prevents discrimination on the account of sex and gender; and Plaintiff Johnson seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct that were in violation of *Title VII* including front pay, back pay, actual and compensatory damages, attorney's fees, and any appropriate injunctive relief and/or equitable relief to which Plaintiff Johnson is entitled under *Title VII.*

152.    Plaintiff Johnson requests that this Court enjoin Defendants MEMA, et al from engaging in acts of harassment and retaliation in violation of *Title VII*; and award such other equitable relief as this Court deems appropriate.

## COUNT V: FOURTEENTH AMENDMENT

153.   Plaintiff Johnson re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

154.   Plaintiff Johnson would show that the Defendants McCraney, Thorpe, and Green, by their harassing actions and conduct, have violated the equal protection rights of Plaintiff Johnson. Defendants McCraney, Thorpe, and Green were personally involved in the deprivation of Plaintiff Johnson's constitutional rights and their actions and conduct deprived Plaintiff Johnson of equal protection under the *Fourteenth Amendment to the United States Constitution* and pursuant to *42 U.S.C. §1983*; and in the harassment against Plaintiff Johnson for having engaged in a protected activity under *Title VII*. These actions deprived Plaintiff Johnson of a warranted pay increase and unwarranted termination.

155.   Plaintiff Johnson would show that *§1983* liability should be "*'read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" "Thus, Defendants are liable for the harm proximately caused by their conduct.*" As the Court has previously concluded, "a plaintiff who establishes liability for deprivations of constitutional rights actionable under *42 U.S.C. § 1983* is entitled to recover *compensatory damages for all injuries suffered as a consequence of those deprivations.*

156.   Defendants McCraney, Thorpe, and Green were personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation; and thus they are liable under *§1983* for those deprivations. The personal involvement requirement is satisfied where the failure to supervise . . . was so severe as to reach the level of 'gross

negligence' or 'deliberate indifference' to the deprivation of the Plaintiff Johnson's constitutional rights.

157.    Plaintiff  Johnson would show that the actions of the Defendants McCraney, Thorpe, and Green as officials of MEMA under *42 U.S.C. §1983* have violated the *Fourteenth Amendment to the United States Constitution* and these acts and conduct in discrimination and retaliation have been violations of the *Equal Protection Clause* and *First Amendment* for which Plaintiff Johnson seeks all appropriate relief under law.

158.    Plaintiff Johnson would show that the Defendant MEMA's management team, McCraney, Thorpe, and Green, by their actions and conduct, violated the equal protection rights of Plaintiff Johnson.  Defendant MEMA's management team, McCraney, Thorpe, and Green, were instrumental the deprivation of the constitutional rights of Plaintiff  Johnson, and their actions in denying Defendant Johnson her **educational benchmark salary increase** and subsequent termination was with a deliberate indifference to the rights and entitlements of Plaintiff  Johnson.    Defendant MEMA's management team, McCraney, Thorpe, and Green's acts and omissions resulted on the constitutional deprivation claimed by Plaintiff  Johnson's *Fourteenth Amendment* rights.

159.    Defendant MEMA's management team, McCraney, Thorpe, and Green, engaged in   actions and conduct which deprived Plaintiff Johnson of equal protection under the *Fourteenth Amendment to the United States Constitution* and pursuant to *42 U.S.C. Section 1983*; and in the retaliation against Plaintiff Johnson having engaged in a protected activity under *Title VII of the Civil Rights Act of 1964,  amended.*   That action deprived Plaintiff Johnson of a warranted  pay increase which was granted to two similarly situated male employees of Defendant MEMA.

160.    Defendant MEMA's management team, McCraney, Thorpe, and Green, at all material times were aware of MSPB's Policy and Procedures Manual provisions that provided for **educational benchmark salary increases** to be based upon the skill, knowledge and professional experience and that they manipulated the **educational benchmark salary increase** of Plaintiff Johnson, but granted **educational benchmark salary increases** to two similarly situated male employees despite knowing that this process was defective, violated the MSBP and Agency's **educational benchmark salary increase** polices, violated *Title VII*, violated Plaintiff Johnson's right to use tools provided by Congress to protect her rights under *Title VII*.

161.    Plaintiff Johnson would show that she received treatment different from that received by two similarly situated males and that the unequal treatment stemmed from a discriminatory intent on the part of Defendant MEMA's management team, McCraney, Thorpe, and Green, as a result of Plaintiff Johnson's sex and gender (female).

162.    Defendants MEMA's management team, McCraney, Thorpe, and Green, actions and conduct in manipulating the **educational benchmark salary increase-** process of the MSPB and the Agency were not objectively reasonable and caused Plaintiff  Johnson to suffer discrimination and retaliation and a denial of her right to equal protection.  Plaintiff Johnson's right to equal protection under the *Fourteenth Amendment* was denied as she received treatment different from that received by two similarly situated male employees of Defendant MEMA outside of the provisions of Defendant MSPB's Policies and Procedures Manual and Employee Handbook.

163.    Defendants MEMA's management team, McCraney, Thorpe, and Green, actions and conduct were also retaliatory as result of Plaintiff Johnson's opposition to unlawful sex and gender discrimination and her engaging in a protected activity – complaining and reporting

discriminatory practice in regard to her disparate treatment in the **educational benchmark salary increases** which resulted in her termination by Defendant MEMA.

164.    As a result thereof, Plaintiff Johnson is entitled to actual, compensatory and punitive damages against the Defendants.

165.    Plaintiff Johnson would show that the Defendant MEMA's management team, McCraney, Thorpe, and Green, by their actions and conduct, violated the equal protection rights of Plaintiff Johnson.   The Defendant MEMA's management team, McCraney, Thorpe, and Green, were involved in the deprivation of Plaintiff Johnson's warranted **educational benchmark salary increase**.

166.    Defendants MEMA's management team, McCraney, Thorpe, and Green, engaged in actions and conduct that deprived Plaintiff Johnson of equal protection under the *Fourteenth Amendment to the United States Constitution* and pursuant to *42 U.S.C. §1983*; and in the retaliation against Plaintiff Johnson for having engaged in a protected activity under *Title VII*. That action deprived Plaintiff Johnson of a warranted pay increase, and Defendant MEMA's management team recklessly terminated Plaintiff Johnson as a result of her complaining and reporting of disparate treatment regarding the Agency's **educational benchmark pay increases incentive program** which  resulted in the constitutional deprivation claimed by Plaintiff Johnson.

167.    Defendants MEMA's management team, McCraney, Thorpe, and Green, at all material times were aware of MSPB's Policies and Procedures Manual that provided for **educational benchmark salary increases** to be based upon the skill, knowledge and professional experience, but they failed to grant a pay increase to Plaintiff Johnson although she was entitled to an **educational benchmark salary increase** along with the other two similarly

situated male employees in her department, but the Defendants MEMA's management team, McCraney, Thorpe, and Green, terminated Plaintiff Johnson despite knowing that these actions were defective and violated the Agency's pay increase and termination polices; and that Defendants MEMA's management team, McCraney, Thorpe, and Green, actions were intentional or with deliberate indifference.

168.    Defendants MEMA's management team, McCraney, Thorpe, and Green, actions and conduct in manipulating the pay increase and termination practices of the Agency were not objectively reasonable and caused Plaintiff Johnson to suffer discrimination and retaliation and a denial of her right to equal protection.    Plaintiff Johnson's right to equal protection under the *Fourteenth Amendment* was denied as she received treatment different from that received by two similarly situated males in her department who were granted **educational benchmark salary increases** by the Defendants. The Defendants did not abide by the MSPB and Agency's **educational benchmark salary increase** procedures nor its termination policies and procedures in their termination of Plaintiff Johnson.

169.    Defendants MEMA's management team, McCraney, Thorpe, and Green, knew that Plaintiff Johnson received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent as a result of Plaintiff Johnson's sex and gender (female).

170.    As a result thereof, Plaintiff Johnson is entitled to actual, compensatory and punitive damages against, Defendant MEMA's management team, McCraney, Thorpe, and Green.

171.    Defendants MEMA's management team, McCraney, Thorpe, and Green, used the perverted pay increase and termination "policies" to constitute a discriminatory practice that

50

implied to other members of management the "constructive acquiescence" of senior policy-making officials to carry on this disparate pay increases and termination practices at the place of employment of Defendant MEMA; with full knowledge of this practice being discriminatory towards females, particularly Plaintiff Johnson, in the Agency.

172.    Plaintiff Johnson seeks a revamping of the selection process for the **educational benchmark salary increase** policies of the Defendant MEMA so as to ensure that this type of subjective and unlawful promotional, pay increase, and termination practices do not occur in the future; and that female candidates for employment are given an equal opportunity for advancement within the Agency; and that female candidates for employment are free of gender discrimination that violates Title VII and the Equal Protection Clause of the Fourteenth Amendment.

173.    Plaintiff Johnson would show that this "custom and usage" of the Defendant MEMA's management team, McCraney, Thorpe, and Green, constitutes disparate treatment and has a disparate impact on employees who are candidates for **educational benchmark salary increases** because of their sex and gender must be stopped.

174.    Plaintiff Johnson would show  that all employees of the Defendant MEMA that seek a pay increase should have that decision-making of management based upon a *"candidate's skill, knowledge and professional experience"* and not based upon prohibited factors that are subjective reasoning and based upon bias, prejudice and favoritism.

175.    Defendant MEMA's pay increase and termination polices are discriminatory and this discrimination is intentional and with the spirit of disparate treatment and should be forbidden to continue in the future by this Court and this pattern and practice of sex and gender discrimination resulted in Plaintiff Johnson being unlawfully denied a pay increase and being

terminated by the Defendants MEMA's management team, McCraney, Thorpe, and Green, after complaining of said disparate treatment.

176.    Defendant MEMA management team's intentional sex and gender discrimination that impacts females with the Agency that is intentional violates the Equal Protection Clause of the Fourteenth Amendment; and this Court should enjoin Defendant MEMA's management team and its officials including Defendants McCraney, Thorpe, and Green from granting pay increases and terminating employees in violation of the Agency's Personnel Policies and Procedures Handbook and that constitutes intentional sex and gender discrimination towards females in particular within the Agency.

## COUNT VI: CLAIMS AGAINST DEFENDANT MCCRANEY

177.    Plaintiff Johnson re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

178.    Plaintiff Johnson would show that the Defendant McCraney, by his actions and conduct, violated the equal protection rights of Plaintiff Johnson. Defendant McCraney was personally involved in the deprivation or his actions were causally related to the denial of equal protection to Plaintiff Johnson.

179.    Defendant McCraney engaged in his actions and conduct deprived Plaintiff Johnson of equal protection under the *Fourteenth Amendment to the United States Constitution* and pursuant to *42 U.S.C. §1983*; and in the retaliation against Plaintiff Johnson for having engaged in a protected activity under *Title VII*. Defendant McCraney's own personal acts and omissions resulted in the constitutional deprivation claimed by Plaintiff Johnson.

180.   Defendant McCraney knew that Plaintiff Johnson received treatment different from that received by two similarly situated male employees and that the unequal treatment stemmed from a discriminatory intent as a result of Plaintiff Johnson's sex and gender (female).

181.   Defendant McCraney's actions and conduct in condoning MEMA's award of **educational benchmark salary increases** disproportionately between MEMA's female and male employees and his actions and conduct in condoning MEMA's disparate disciplining practice between the female and male employees are not objectively reasonable and caused Plaintiff Johnson to suffer discrimination and retaliation and a denial of her right to equal protection. Defendant McCraney and his "HR" department knew that Plaintiff Johnson should have been awarded her **educational benchmark salary increase** and that she received a disproportionate and harsher discipline disposition, that being termination, than her male counter-part with prior disciplinary infractions. Plaintiff Johnson had outstanding job performance evaluations, and she had not been disciplined for any infractions while employed by Defendant MEMA.

182.   Defendant McCraney knew that Defendant Green engaged in a pattern and practice of harassment and bullying Plaintiff Johnson, had actual knowledge of Green's conduct and treatment of Plaintiff Johnson, and he acquiesced and condoned such practice. Defendant McCraney's turning a "blind eye" at times for fear of what he might see still imposes supervisory liability for his personal involvement of Defendant Green's constitutional violation and his having condoned it.

183.   Defendant McCraney knew that it was established that Defendant Green violated clearly established law and that his conduct and treatment was reprehensible and yet, he did nothing to protect Plaintiff Johnson from disparate treatment and retaliation.

184.     The *Fourteenth Amendment to the Constitution of the United States* guarantees that no state shall deprive any person of life, liberty or property without due process of law; and Defendant McCraney acting under color of state law, deprived Plaintiff Johnson of a federally protected and statutory right for which he is personally liable.

185.     Defendant McCraney's animus towards Plaintiff Johnson and the disparate and retaliatory treatment under his leadership at MEMA violated clearly established law that prohibited such conduct.

186.     Defendant McCraney violated a statutory or constitutional right of Plaintiff Johnson that was clearly established at the time of the challenged conduct and that his actions were not objectively reasonable; and that such conduct violates a clearly established right when the contours of the right are sufficiently clear that every reasonable official would have understood that the conduct at issue violates the right. Defendant McCraney's actions violated *First Amendment* protected speech and the *Equal Protection Clause*. Furthermore, Defendant McCraney allowed Plaintiff Johnson to suffer adverse treatment based upon her sex – being a female; and he allowed the "bullying" during his tenure as Executive Director of Defendant MEMA.

187.     Defendant McCraney, as a supervisory official under *Section 1983* had: (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Turner v. Lieutenant Driver, 848 F.3d 678, 695-96 (5th Cir. 2017)*. "Personal involvement . . . generally includes giving a 'command, signal, or any other form of direction to the [subordinate] officers.'" *Id. at 696.*

188.     Defendant McCraney 's actions and conduct were also retaliatory as result of

Plaintiff Johnson's opposition to unlawful sex and gender discrimination and her engaging in a

protected activity – in regard to her disparate treatment and the filing of her internal grievance.

Defendant McCraney knew that Defendant Green was bullying Plaintiff Johnson, and he failed

to stop the treatment that violated the constitutional rights of Plaintiff Johnson.

189.     Defendant McCraney's acts and conduct resulted in a disparity in treatment by a

state agency, MEMA, and between an employee who is a member of a protected class of

individuals who was treated differently only because of her sex and gender; and that resulted in

violation of her *Equal Protection Clause*. Plaintiff Johnson had her rights under the *Fourteenth

Amendment* violated as Defendant McCraney simply failed to act to address the actions of

Defendant Green.

190.     Defendant Green engaged in a pattern and practice of harassment and bullying of

Plaintiff Johnson, and Defendant McCraney, along with other officials of Defendant MEMA,

had actual knowledge of Green's conduct and treatment of Plaintiff Johnson, and he acquiesced

and condoned such practice, and he was biased and prejudiced towards Plaintiff Johnson a

female employee of MEMA.

191.     Defendant McCraney's actions as alleged herein were not objectively reasonable

where  they violated a clearly established law. Defendant McCraney's acts were not reasonable;

and he is liable for his actions and the retaliating against Plaintiff Johnson in violation of clearly

established law.

192.     As a result, thereof, Plaintiff Jonson is entitled to actual, compensatory and

punitive damages against Defendant McCraney.

## COUNT VII: CLAIMS AGAINST DEFENDANT THORPE

193.     Plaintiff Johnson re-alleges and hereby incorporates by reference and makes a

part hereto each and every one of the above numbered paragraphs, inclusive of the allegations o

fact contained therein.

194.     Plaintiff Johnson would show that the Defendant Thorpe, by her actions and

conduct, violated the equal protection rights of Plaintiff Johnson. Defendant Thorpe was

personally involved in the deprivation or her actions were causally related to the denial of equal

protection to Plaintiff Johnson.

195.     Defendant Thorpe engaged in her actions and conduct deprived Plaintiff Johnson

of equal protection under the *Fourteenth Amendment to the United States Constitution*

and pursuant to *42 U.S.C. §1983*; and in the retaliation against Plaintiff Johnson for having

engaged in a protected activity under *Title VII*. Defendant Thorpe's own personal acts and

omissions resulted in the constitutional deprivation claimed by Plaintiff Johnson.

196.     Defendant Thorpe knew that Plaintiff Johnson received treatment different from

that received by two similarly situated male employees and that the unequal treatment stemmed

from a discriminatory intent as a result of Plaintiff Johnson's sex and gender (female).

197.     Defendant Thorpe's actions and conduct in condoning MEMA's award of

**educational benchmark salary increases** disproportionately between MEMA's female and

male employees and her actions and conduct in condoning MEMA's disparate disciplining

practice between the female and male employees are not objectively reasonable and caused

Plaintiff Johnson to suffer discrimination and retaliation and a denial of her right to equal

protection. Defendant Thorpe and her "HR" department knew that Plaintiff Johnson should have

been awarded her **educational benchmark salary increase** and that she received a

56

disproportionate and harsher discipline disposition, that being termination, than her male counter-part with prior disciplinary infractions. Plaintiff Johnson had outstanding job performance evaluations, and she had not been disciplined for any infractions while employed by Defendant MEMA.

198.    Defendant Thorpe knew that Defendant Green engaged in a pattern and practice of harassment and bullying Plaintiff Johnson, had actual knowledge of Green's conduct and treatment of Plaintiff Johnson, and she acquiesced and condoned such practice. Defendant Thorpe's turning a "blind eye" at times for fear of what she might see still imposes supervisory liability for her personal involvement of Defendant Green's constitutional violation and her having condoned it.

199.    Defendant Thorpe knew that it was established that Defendant Green violated clearly established law and that his conduct and treatment was reprehensible and yet, she did nothing to protect Plaintiff Green from disparate treatment and retaliation.

200.    The *Fourteenth Amendment to the Constitution of the United States* guarantees that no state shall deprive any person of life, liberty or property without due process of law; and Defendant Thorpe acting under color of state law, deprived Plaintiff Johnson of a federally protected and statutory right for which she is personally liable.

201.    Defendant's animus towards Plaintiff Johnson and the disparate and retaliatory treatment under her leadership at MEMA violated clearly established law that prohibited such conduct.

202.    Defendant Thorpe violated a statutory or constitutional right of Plaintiff Johnson that was clearly established at the time of the challenged conduct and that her actions were not objectively reasonable; and that such conduct violates a clearly established right when the

contours of the right are sufficiently clear that every reasonable official would have understood

that the conduct at issue violates the right. Defendant Thorpe's actions violated *First Amendment*

protected speech and the *Equal Protection Clause*. Furthermore, Defendant Thorpe allowed

Plaintiff Johnson to suffer adverse treatment based upon her sex – being a female; and she

allowed the "bullying" during her tenure as Director of Preparedness of the Defendant MEMA.

203.     Defendant Thorpe, as a supervisory official under *Section 1983* had: (1) personal

involvement in the constitutional deprivation, or (2) a sufficient causal connection between the

supervisor's wrongful conduct and the constitutional violation. *Turner v. Lieutenant Driver, 848*

*F.3d 678, 695-96 (5th Cir. 2017)*. "Personal involvement . . . generally includes giving a

'command, signal, or any other form of direction to the [subordinate] officers.'" *Id. at 696*.

204.     Defendant Thorpe's actions and conduct were also retaliatory as result of Plaintiff

Johnson's opposition to unlawful sex and gender discrimination and her engaging in a protected

activity – in regard to her disparate treatment and the filing of her internal grievance. Defendant

Thorpe knew that Defendant Green was bullying Plaintiff Johnson, and she failed to stop the

treatment that violated the constitutional rights of Plaintiff Johnson.

205.     Defendant Thorpe's acts and conduct resulted in a disparity in treatment by a state

agency, MEMA, and between an employee who is a member of a protected class of individuals

who was treated differently only because of her sex and gender; and that resulted in violation of

her *Equal Protection Clause*. Plaintiff Johnson had her rights under *Fourteenth Amendment*

violated as Defendant Thorpe simply failed to act to address the actions of Defendant Green.

206.     Defendant Green engaged in a pattern and practice of harassment and bullying of

Plaintiff Johnson, and Defendant Thorpe, along with other officials of Defendant MEMA, had

actual knowledge of Green's conduct and treatment of Plaintiff Johnson, and she acquiesced and

condoned such practice, and she was biased and prejudiced towards Plaintiff Johnson a female employee of MEMA.

207.    Defendant Thorpe's actions as alleged herein were not objectively reasonable where they violated a clearly established law. Defendant Thorpe's acts were not reasonable; and she is liable for her actions and the retaliating against Plaintiff Johnson in violation of clearly established law.

208.    As a result, thereof, Plaintiff Jonson is entitled to actual, compensatory and punitive damages against Defendant Thorpe.

### COUNT VIII: CLAIMS AGAINST DEFENDANT GREEN

209.    Plaintiff Johnson re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

210.    Plaintiff Johnson would show that the Defendant Green, by his actions and conduct, violated the equal protection rights of Plaintiff Johnson. Defendant Green was personally involved in the deprivation, and his actions were with deliberate indifference to the rights and entitlements of Plaintiff Johnson.

211.    Defendant Green engaged in his actions and conduct deprived Plaintiff Johnson of equal protection under the *Fourteenth Amendment to the United States Constitution* and pursuant to *42 U.S.C. Section 1983*; and in the retaliation against Plaintiff Johnson for having engaged in a protected activity under the policies of the Agency and *Title VII*.

212.    Plaintiff Johnson would show that she received treatment different from that received by two similarly situated male employees of Defendant MEMA and that the unequal

59

treatment stemmed from a discriminatory intent on the part of Defendant Green as a result of Plaintiff Johnson's sex and gender (female).

213.    Plaintiff Johnson would show that the *Fourteenth Amendment to the Constitution of the United States* guarantees that no state shall deprive any person of life, liberty or property without due process of law; and Defendant Green acting under color of state law, deprived Plaintiff Johnson of a federally protected and statutory right for which he is personally liable.

214.    Defendant Green violated a statutory or constitutional right of Plaintiff Johnson that was clearly established at the time of the challenged conduct and that his actions were not objectively reasonable; and that such conduct violates a clearly established right when the contours of the right are sufficiently clear that every reasonable official would have understood that the conduct at issue violates the right.

215.    Defendant Green's action created a chilling effect on the grievance process within the Defendant MEMA especially when he verbally attacked Plaintiff Johnson in meetings at Defendant MEMA'S headquarters on numerous occasions. Defendant Green's specifically yelling at Plaintiff Johnson in meetings with him, engaging in "bullying" of Plaintiff Johnson during his meetings with Plaintiff Johnson in the presence of other MEMA employees, his engaging in rendering antagonizing comments to Plaintiff Johnson regarding what other MEMA employees thought about Plaintiff Johnson, and his stalking of Plaintiff Johnson was excessive given Plaintiff Johnson's bringing matters of public concern to him and the Defendant MEMA.

216.    Defendant Green's actions and conduct was also retaliatory as result of Plaintiff Johnson's opposition to unlawful sex and gender discrimination and her engaging in a protected activity – the filing of a complaint in regard to her disparate treatment in not receiving her **educational benchmark salary increase** and disparate disciplinary procedures of Defendant

MEMA. Defendant Green's actions were to retaliate against Plaintiff Johnson for her making claim that she was subjected to discriminatory treatment based upon her sex and gender; and for her *First Amendment* protected speech.

217.    Defendant Green's acts and conduct resulted in a disparity in treatment by a state agency, MEMA, and were channeled at an employee who is a member of a protected class of individuals who was treated differently only because of her sex and gender; and that resulted in violation of her protection under the *Equal Protection Clause*. Plaintiff Johnson had her rights under the *Fourteenth Amendment* violated as Defendant Green engaged in bullying of Plaintiff Johnson after she complained about her disparate treatment in relation to two similarly situated male employees in the granting of **educational benchmark salary increases** and the disciplinary procedures of MEMA in violation of the *Equal Protection Clause*. But for her sex and gender, Defendant Green would not engaged in such conduct that violated the constitutional rights of Plaintiff Johnson.

218.    Defendant Green's actions as alleged herein were not objectively reasonable where they violated a clearly established law. Defendant Green's acts were not reasonable; and thus he is liable for retaliating against Plaintiff Johnson for filing her grievance and engaging in protected speech under the *First Amendment*.

219.    As a result, thereof, Plaintiff Johnson is entitled to actual, compensatory a punitive damages against Defendant Green.

## COUNT IX: FIRST AMENDMENT

220.    Plaintiff Johnson re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

221.    Plaintiff Johnson would show that public employees do not surrender all their *First Amendment* rights by reason of their employment.   Plaintiff Johnson, was unlawfully denied an **educational benchmark salary increase**, and she was terminated in retaliation for exercising her *First Amendment* rights by Defendants MEMA, McCraney, Thorpe and Green.

222.    Plaintiff  Johnson avers that she is entitled to prevail on a *First Amendment* retaliation claim, as she: (1) suffered an adverse employment decision; (2) was engaged in protected activity; and (3) there is the requisite causal relationship between the adverse action and protected activity.

223.    Plaintiff  Johnson would show that her complaint of discrimination filed with the management team of Defendant MEMA constituted a "protected activity" under the *First Amendment* and that the Defendants MEMA, McCraney, Thorpe, and Green responded with retaliation and reprisal that resulted in the unlawful denial of a pay increase and termination of Plaintiff Johnson.

224.    Plaintiff Johnson would show that her protected speech is a matter of public interest, and was engaged in to sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government.

225.    Plaintiff Johnson would show that she was subjected to retaliation and reprisal for having come forward both internally (grievances) and externally  after complaining and reporting discriminatory actions of the Defendants MEMA, McCraney, Thorpe, and Green to the MEAB and the EEOC and challenging the malfeasance within the Defendant MEMA's agency and its unlawful and disciplinary practices, its unlawful and discriminatory practice with its **educational benchmark salary increase incentive program** and its unlawful and discriminatory termination practices there within by its agents, *inter alia*, the Defendants McCraney, Thorpe, and Green.

226.    Defendants MEMA, McCraney, Thorpe, and Green should be assessed actual and compensatory damages for the violations of the *First Amendment* rights of Plaintiff Johnson.

227.    Plaintiff Johnson avers that she suffered an adverse employment decision, in that she has had her employment at MEMA taken from her after she protested the disparate treatment of her; Plaintiff Johnson was denied her **educational benchmark salary increase** which was granted to two similarly situated males; and she received a much harsher discipline, termination, from Defendant MEMA's management team than a male co-worker with previous disciplinary incidents. The issue of sex and gender discrimination in the workplace is a matter of "public concern" and a First Amendment "protected activity". There is the requisite causal relationship between the adverse action and protected activity in that she was terminated as a result of challenging her disparate treatment by the Defendants.

228.    Plaintiff Johnson's bringing of these matters of public concern outweighs the interest of the employer in promoting efficiency. Disparate pay and disparate treatment of the speech of Plaintiff Johnson that motivated the action of the Defendants MEMA, McCraney, Thorpe, and Green; and this speech was protected speech under *Waters v. Churchill, 511 U.S. 661 (1994)*.

229. Plaintiff Johnson would show that "speech" by citizens on matters of public concern lies at the heart of the *First Amendment*, which was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people. This remains true when speech concerns information related to or learned through public employment. After all, public employees do not renounce their citizenship when they accept employment, and this Court has cautioned time and again that public employers may not condition employment. on relinquishment of constitutional rights. Plaintiff Johnson would show that her protected speech is

a matter of public interest, and was engaged in to "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." *Schrier v. Univ. of Colo., 427 F.3d 1253, 1263 (10th Cir. 2005) (quoting Wilson v. City of Littleton, Colo., 732 F.2d 765, 768 (10th Cir. 1984)).*

230.    Plaintiff Johnson would show that she was subjected to retaliation and reprisal for having come forward and challenged the malfeasance within the Defendant MEMA and its unlawful practices in, inter alia, the disparate treatment she received by being denied her **educational benchmark salary increase**, and the disparate treatment she received in being terminated by the Defendants MEMA, McCraney, Thorpe, and Green.

231.    Defendants McCraney, Thorpe, and Green should be assessed actual and compensatory damages for the violations of the *First Amendment* rights of Plaintiff Johnson.

## COUNT X: SECTION 1981 AND SECTION 1983 CLAIMS

232.    Plaintiff Johnson re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

233.    Plaintiff Johnson seeks any and all relief under *42 U.S.C. Section 1981* against Defendants McCraney, Thorpe, and Green for the acts and conduct as alleged herein that constituted discrimination and retaliation in the workplace of the Defendant MEMA. Pay to employees such as Plaintiff Johnson should be based upon work performed, and employees should be properly classified so as to not deprive them based upon their gender and their protesting of disparate pay or retaliating against them for engaging in a protected activity.

234.    Defendants McCraney, Thorpe and Green should be assessed actual and compensatory damages for the violations of *Section 1981, under 42 U.S.C. Section 1983.*

## COUNT XI: DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

235.    Plaintiff Johnson re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

236.    Defendant MEMA's management team, McCraney, Thorpe, and Green had an alignment of interests, that being the "bringing down" Plaintiff Johnson for her grievance regarding not receiving her **educational benchmark salary increase**. Plaintiff Johnson seeks this Court to grant a declaratory judgment that the Defendant MEMA's management team, McCraney, Thorpe, and Green are: (1) responsible for any injuries, damages and losses incurred Plaintiff Johnson as a result of the actions by the party Defendants; (2) that Defendant MEMA's management team, McCraney, Thorpe, and Green at all material times knew that the constitutional rights of Plaintiff Johnson were being violated; (3) that the actions of Defendant MEMA's management team, McCraney, Thorpe, and Green were motivated purely by the sex and gender of Plaintiff Johnson, and in retaliation for her opposition; and (4) that the law in question as to such conduct being unlawful was clearly established at all material times alleged herein.

237.    In *Will v. Michigan Dep't of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)*, the Supreme Court held that neither states nor state officials in their official capacities are persons subject to suit under §1983. Id. at 71. But, *Cobb v. The Rector & Visitors of Univ. of Va., 69 F. Supp. 2d 815, 824 (W.D. Va. 1999)* does not prohibit the plaintiffs from suing the individual defendants in their personal capacities." (citing *Hafer v. Melo, 502 U.S. 21, 27, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991))*). It noted the exception, however, that an official is nonetheless a "person" under *§1983* when sued for injunctive relief because "official-capacity

actions for prospective relief are not treated as actions against the State." *Will, 491 U.S. at 71 n.10 (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)); see also Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).*

238.    Plaintiff Johnson would show that retaliation occurs when an employer acts against an employee not because of his or her sex, but because she engaged in protected activity complaining about or otherwise opposing discrimination. In this case, Defendant MEMA's management team, McCraney, Thorpe, and Green engaged in such retaliation against Plaintiff Johnson in violation of *Title VII.*

239.    Defendant MEMA's management team, McCraney, Thorpe and Green intentionally engaged in and continue to engage in those unlawful employment practice charged in the Complaint of Plaintiff Johnson in violation of *Title VII*, and this Court should enjoin the Defendant MEMA's management team, McCraney, Thorpe, and Green from engaging in such unlawful employment practice.

240.    This Court should order and direct such affirmative action as may be appropriate, which may include, but is not limited to, revamping the classification policies of Defendant MEMA so as to not discriminate against employees based upon their sex and gender and to not retaliate against employees that protest discrimination in the workplace.

241.    Defendants MEMA's management team, McCraney, Thorpe, and Green intentionally retaliated against Plaintiff Johnson in violation of *Title VII* and thus further engaged intentionally in an unlawful employment practice charged in the Complaint of Plaintiff Johnson and this Court should enjoin the Defendant MEMA's management team, McCraney, Thorpe, and Green from engaging in such unlawful employment practice, and this Court should order and direct such affirmative action as may be appropriate to prevent the Defendant MEMA's

management team, McCraney, Thorpe, and Green from engaging in such unlawful activity when an employee such as Plaintiff Johnson is subjected to discrimination in the workplace.

242.    Plaintiff Johnson seeks injunctive relief from this Court to remove and have purged any negative documentation regarding her internal grievance, MEAB grievance and EEOC Charge filed in regards to this litigation; as well as any file created at the MEMA that may be in the possession of any of the Defendants MEMA, McCraney, Thorpe, and Green the HR Department at MEMA; and that Defendants MEMA, McCraney, Thorpe, and Green be enjoined from providing information, issue statements, or take any action, directly or indirectly, that would cause embarrassment or humiliation or otherwise cause or contribute to Plaintiff Johnson being held in disrepute.

243.    Plaintiff Johnson requests that this Court enjoin Defendant MEMA, its agents, employees, successors, assigns, and all persons in active concert or participation with them from intentionally engaging in unlawful employment practices; bullying and intimidating state employees like Plaintiff Johnson as well as other female MEMA employees; and engaging in subjective practices that have a "disparate impact" on female employees of Defendant MEMA in violation of *Title VII*; and to enjoin the Defendant MEMA from having employees such as Plaintiff Johnson being denied pay raises as similarly situated male employees; and enjoin the Defendant MEMA from disparate disciplinary practices; and award such other equitable relief as this Court deems appropriate.

## COUNT XI: HOSTILE WORK ENVIRONMENT CLAIM

244.    Plaintiff Johnson re-alleges and hereby incorporates by reference and makes part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained therein.

245.    Plaintiff Johnson was subjected to a hostile work environment by Defendant Green in Plaintiff Johnson's supervisory chain of command at Defendant MEMA; and Defendant MEMA is responsible for this conduct that was severe and pervasive. That a copy of Plaintiff Johnson's complaints to Defendants MEMA management team, McCraney, Thorpe, and Green regarding her complaint on the hostile work environment are attached hereto marked *Exhibit "N"* and incorporated herein by reference.

246.    Plaintiff Johnson, in a hostile working environment claim, must establish, inter alia, that the harassment was sufficiently severe or pervasive as to affect a term condition or privilege of her employment. To be actionable the alleged harassment must have created an environment that a reasonable person would find hostile or abusive. Whether the environment was hostile or abusive depends upon the totality of the circumstances including factors such as frequency of conduct, its severity, the degree to which the conduct is physically threatening or humiliating and the degree to which the conduct unreasonably interferes with the employee's work performance.

247.    That Defendant MEMA's management team, McCraney and Thorpe had a duty to fully investigate the allegations and complaints made by Plaintiff Johnson in her grievance regarding her denied **educational benchmark salary increase** and his disparate discipline of termination and to protect employees such as Plaintiff Johnson from harassment and bullying by Defendant Green that possessed the authority to inflict psychological injury by altering the work environment in objectionable ways.

248.    Plaintiff Johnson would show that the actions of Defendant Green surpasses factors to determine whether conduct is severe or pervasive include: "its frequency, whether it

was physically threatening or humiliating or merely offensive, and whether it unreasonably interfered with the employee's work performance.

249. Plaintiff Johnson would show that a hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment

250. Plaintiff Johnson would show that to prevail on a sex and gender hostile work environment claim, an employee must prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) such harassment was based on sex or gender; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

251. Plaintiff Johnson would show that the Defendant MEMA's management team, McCraney, Thorpe, and Green knew about the harassment and failed to take effective action to stop it. Officials of the Defendant MEMA's management team knew that Defendant Green had a pattern of harassment and bullying, and that Defendant Green made it clear to Plaintiff Johnson by his actions described herein, that he had no respect for her on account of her sex and gender or the grievance process under the Mississippi State Personnel Board.

252. Plaintiff Johnson would show that her work environment was hostile or abusive based upon the totality of the circumstances, including the frequency and severity of the discriminatory conduct; and the hostile work environment was physically threatening and humiliating" and unreasonably interfered with Plaintiff's ability to perform her job.

253.    Defendants MEMA's management team, McCraney, Thorpe, and Green violated clearly established law, violated the civil rights of Plaintiff Johnson, and unlawfully retaliated against her for bringing of matters of public concern – sex and gender bias and ongoing harassment and bullying - within the Defendant MEMA.

254.    Defendant MEMA's management team, McCraney, Thorpe, and Green knew at all material times that Plaintiff Johnson had a legitimate claim for receiving her **educational benchmark salary increase** and that she was not treated the same as two male similarly situated MEMA employees who received their **educational benchmark salary increases**. Defendant MEMA's management team, McCraney, Thorpe, and Green knew that Plaintiff Johnson endured disparate treatment by being terminated wherein a similarly  situated male employee received a less harsher penalty of the discipline than Plaintiff Johnson. The Defendant MEMA's management team, McCraney, Thorpe, and Green refused to address with Plaintiff Johnson their disparate treatment in pay raises and discipline practices.

## PUNITIVE DAMAGES, ATTORNEY'S FEE AND EQUITABLE RELIEF

255.    Plaintiff Johnson re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

256.    The acts and conduct of Defendant MEMA's management team, McCraney, Thorpe, and Green were engaged in with such willful and wanton disregard for the rights of Plaintiff Johnson, that she is entitled to recover of, from and against Defendants MEMA, McCraney, Thorper, and Green, punitive damages over and above actual and compensatory damages sustained by Plaintiff Johnson, as a result of the acts and conduct of the Defendant MEMA's management team, McCraney, Thorpe, and Green, infra, and as alleged herein.

257.    That the acts and conduct of the Defendant MEMA's management team, McCraney, Thorpe, and Green as alleged herein, were done in such willful and wanton disregard for the rights of Plaintiff Johnson, with such gross negligence that Plaintiff Johnson is entitled to recover of, from and against the Defendants, punitive damages as a result of the outrageous acts and conduct and to deter them and others from engaging in such similar conduct in the future. *Cooper Indus. v. Leatherman Tool Group, 532 U.S. 424 (2001).*

258.    The acts and conduct of Defendant MEMA's management team, McCraney, Thorpe, and Green violated the protected rights of state employees such as those referenced in this Complaint, and this Court should take such other and further action as the Court deems appropriate to ensure that state employees of the Defendant MEMA are not subjected in the future to that same treatment suffered by Plaintiff Johnson as alleged herein.

259.    Plaintiff Johnson seeks relief from this Court to provide prospective relief to Plaintiff Johnson and all state employees to ensure that they are not deprived of due process and that the Defendant MEMA and its officials timely respond to grievances submitted as provided for by the Mississippi State Personnel Board ("MSPB").

260    Plaintiff Johnson seeks relief that the Defendant MEMA and its officials be ordered and mandated by this Court not to interfere or harass any female MEMA employee that challenges unlawful employment practices or submit grievances under the policies and procedures of the MSPB and MEMA.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** based on the foregoing allegations, Plaintiff Johnson requests the Court to assume jurisdiction over this cause, and upon a hearing of the merits in this cause, grant the following relief:

a. Ordering and directing the Defendant MEMA its agents, employees, successors, assigns, and all persons associated with MEMA to abandon the unlawful pay raise and termination practices that allows for employees such as Plaintiff Johnson to be subjected to sex and gender discrimination and retaliation; and violation of the *Equal Protection Clause* and *First Amendment of the United States Constitution*;

b. Order and direct the Defendant MEMA to pay any and all back pay and benefits due Plaintiff Johnson and to reinstate job duties taken away from her and with proper pay for those services and duties performed for the Defendant MEMA; and to place Plaintiff Johnson in the position that she held but before the discrimination and retaliation that she has been subjected to in violation of *Title VII* and the *Equal Protection Clause*;

c. Award Plaintiff Johnson a judgment for any and all back pay due her under the *Equal Pay Act (EPA)* and liquidated damages to be assessed against Defendant MEMA for the violation of the *EPA* for failing to pay Plaintiff Johnson in violation of the *EPA*;

d. Award Plaintiff Johnson a judgment against Defendant MEMA in the amount of $750,000.00 for her actual and compensatory damages to which she is entitled for injury, damage, and loss suffered as a result of Defendant MEMA management team's violation of *42 U.S.C. §§ 2000e; Title VII*, and for retaliation in violation of *Title VII*; and violation of the *First Amendment* rights of Plaintiff Johnson and violation of the *Equal Protection Clause of the United States Constitution*;

e. Award Plaintiff Johnson any and all costs and attorney's fees pursuant to the relevant provisions of *42 U.S.C. §§ 2000e; and 42 U.S.C. Section 1988*;

f. Grant a permanent injunction enjoining Defendant MEMA, its agents, employees, successors, assigns, and all persons in active concert or participation with them, from engaging

in sexual discrimination in violation of *42 U.S.C. §§ 2000e* and *Title VII*; and the *Equal Protection Clause*; and in regard to *First Amendment* retaliation;

g. Grant a permanent injunction enjoining the Defendant MEMA, its agents, employees, successors, assigns, and all persons in active concert or participation with them from intentionally engaging in unlawful employment practices; bullying and intimidating state employees like Plaintiff Johnson, as well as other female employees; and engaging in practices that have discriminated against female employees of the Defendant MEMA in violation of Title VII; and to enjoin the Defendant MEMA from denying **educational benchmark salary increases** such as Plaintiff Johnson was denied;

h. Award a judgment against Defendants McCraney, Thorpe, and Green, jointly and severally, in an amount of $750,000.00 for actual and compensatory damages for violation of Plaintiff Johnson's equal protection rights of the *United States Constitution* and rights under the *First Amendment of the United States Constitution*, under *42 U.S.C. Section 1983*; and the assessment of actual and compensatory damages as provided for by law for the deprivations caused Plaintiff Johnson;

i. Award a judgment against the Defendant MEMA for any and all loss of pay due Plaintiff Johnson along with any and all loss of retirement benefits provided by the Public Employees' Retirement System of Mississippi ("PERS") that serves the State of Mississippi by providing retirement benefits for individuals working in state government;

j. Award a judgment against Defendants MEMA, McCraney, Thorpe, and Green, jointly and severally, for punitive damages in an amount to be determined by the Court and jury to deter such intentional conduct from occurring in the future and as a result of the deliberate indifference

of Defendants McCraney, Thorpe, and Green for their actions in the case, sub judice, that

violated the constitutional and statutory rights of Plaintiff Johnson; and

k. Award Plaintiff Johnson all such other and further relief as may be necessary and

proper and to which she is otherwise entitled in this action against Defendants MEMA,

McCraney, Thorpe, and Green.

RESPECTFULLY SUBMITTED, this the _____ day of November, 2023.

_____
JASMINE JOHNSON, DEFENDANT

STATE OF MISSISSIPPI

COUNTY OF MADISON:

Personally appeared before me, the undersigned authority in and for the jurisdiction

aforesaid, the within named, **JASMINE JOHNSON**, who after being duly sworn, stated on oath

that the matters contained and set forth in the above and foregoing Complaint are true and

correct as therein stated.

_____
JASMINE JOHNSON, DEFENDANT

SWORN TO AND SUBSCRIBED before me this the _____ day of November, 2023.

_____
NOTARY PUBLIC

My Commission Expires:

_____

*(Notary seal: STATE OF MISSISSIPPI, NOTARY PUBLIC, ID # 53992, NICKIE BRANCH, Commission Expires Oct. 28, 2026, MADISON COUNTY)*

**OF COUNSEL:**

**LAW OFFICES OF BRIDGETT M. CLAYTON**
**ATTORNEY BRIDGETT M. CLAYTON, MBN 10247**
**ATTORNEY FOR PLAINTIFF JASMINE JOHNSON**
**P. O. BOX 13953**
**JACKSON, MS 39236**
**TELEPHONE:        (601) 961-9494**
**FACSIMILE:         (601) 961-9495**
**EMAIL:               attybmc@bellsouth.net**

## REQUEST FOR TRIAL BY JURY

Plaintiff Johnson, by and through counsel, respectfully requests this Court to grant her a trial by jury of her peers.

**RESPECTFULLY SUBMITTED**, this the _6th_, day of November, 2023.

_____

**BRIDGETT M. CLAYTON,
ATTORNEY FOR PLAINTIFF,
JASMINE JOHNSON**

**OF COUNSEL**:

**LAW OFFICES OF BRIDGETT M. CLAYTON
ATTORNEY BRIDGETT M. CLAYTON, MBN 10247
ATTORNEY FOR PLAINTIFF JASMINE JOHNSON
P. O. BOX 13953
JACKSON, MS 39236
TELEPHONE:          (601) 961-9494
FACSIMILE:          (601) 961-9495
EMAIL:              attybmc@bellsouth.net**